## Milo Clemens et al. v. Louis Conrad.

*Contract : As to equities or interests of third persons.* Conrad had contracted with Clemens to sell a tract of land containing a stone quarry, and to convey the same by deed to be executed by himself and other persons within ten days; and Clemens agreed that Conrad might continue to quarry and remove the stone for three months:

*Held,* that in an action by Conrad against Clemens for refusing to allow him to take away the stone so quarried, it was immaterial to enquire why the co-grantors were to sign the deed; and that, as Clemens asserted no equities against any third party, there was no presumption that the co-grantors were interested as joint owners of the stone and therefore ought to have been joined as plaintiffs.

*Held further,* That the neglect of Conrad to take away the stone according to the terms of the contract, did not operate as a forfeiture of his property.

*Evidence: Whether secondary or not.* A witness may be asked whether a deed and mortgage had been given: the question not calling for their contents.

*Evidence: Admissibility of an unstamped agreement.* Congress has no power to prescribe rules of evidence to the State Courts; and therefore the act of Congress which declares that certain instruments shall not be received as evidence in any

CLEMENS ET AL. *v.* CONRAD.

Court, unless stamped as required by the act, is to be understood as applicable only to the Courts of the United States.

*Witness: Discredited by cross-examination.* A witness may be asked on cross-examination whether he has ever been indicted and convicted of a criminal offense. The distinction between the questions—whether he had been indicted for a criminal offense, or whether he had been confined in the State prison, when asked of the witness himself, is unimportant. *Wilbur v. Flood 16 Mich., 40* cited and approved.

*Heard July 10. Decided October 12.*

Error to Wayne Circuit.

This was an action of assumpsit brought upon a special contract entered into between Louis Conrad, the plaintiff below, and Milo, William A., and Phineas H. Clemens, on the 31st of August, 1866, by which Conrad agreed to sell to the Clemens Brothers a tract of land in the State of Ohio, on which was a stone quarry that Conrad was then working, for the sum of six thousand dollars; payable five hundred dollars when the said Clemens took possession, and the remainder in eight equal annual instalments with interest, and "to convey said premises to said Clemens by a good warranty deed within ten days from" the date of said contract; "said deed to be executed and signed by George Michael and wife, and Louis Conrad and wife." By the same contract it was agreed on the part of the vendees, the Clemens Brothers, that "they are to give to the said Conrad permission to quarry on the said premises in the quarry in which he is now quarrying until December 1st next, and to use the dock on the N. E. corner of said premises to ship his stone from until said December 1st next. Said Conrad is to commit no waste during said time upon said premises, and to so quarry as to leave upon said dock on the said 1st December next, not more than two vessel loads of stone, and the two loads of stone he is to remove as early as convenient during the next spring, after which the entire use and ownership of the dock is to vest in the said Milo Clemens, William A. Clemens and Phineas H. Clemens."

The breach of this contract on which the plaintiff counted specially, was, that in pursuance of the agreement, he proceeded and quarried stone until the said first day of December, at which time he had upon, or near the dock, about 1,800 cubic feet of stone so quarried upon said premises, the same not being more than two vessel loads, as well as about 3,000 cubic feet quarried from and lying in or near the quarry, of the value of $4,000; that on the first of December the defendants entered into possession of the premises, and refused to deliver the possession of the stone so lying on the premises to the plaintiff, but sold or otherwise disposed of the same and refused to account for, or pay over to the plaintiff the value of the said stone.

The defendants pleaded the general issue; gave notice of set off and that they would recoup their damages occasioned by the plaintiff's breach of the contract on which he had declared.

On the trial a verdict and judgment were rendered for the plaintiff; and the case is brought into this Court by the defendants below, to review the decisions of the Circuit Judge as to his construction of the contract; and upon the following questions as to the admissibility of evidence.

Louis Conrad the plaintiff was examined as a witness on his own behalf and having testified to his execution of the contract of August 31st, he was asked by his counsel:— " Was a deed and mortgage afterward given between the parties to this suit, relative to this quarry? The question was objected to, but allowed by the Circuit Judge.

He was also asked on cross-examination :— " How much stone did you ship and use from August 31st to December 1st?" and — " Why did the Clemens Brothers insist that these two vessel loads of stone which you had a right to ship, should be piled on the dock before the 1st day of

CLEMENS ET AL. *v*. CONRAD.

of December?" Both these questions were objected to by the plaintiff's counsel and the objections were sustained.

The contract declared on was written on two pieces of paper pasted together, and having on it but one revenue stamp (of five cents), its introduction in evidence was objected to as insufficiently stamped. The objection was overruled and the paper admitted.

P. H. Clemens, one of the defendants, was examined as a witness on their behalf, and was asked by defendants' counsel: " What did Conrad, if anything, state to you before the making of the contract, as to who owned the undivided half claimed by him?"—"In what capacity did Conrad claim to act in the transfer of this property?" and " State why Conrad and wife were to sign the deed?" These questions were objected to by the counsel for the plaintiff, and the objections were sustained.

A witness, called by the defendants, was asked, on cross-examination, " were you indicted, in 1865, in Sandusky, for smuggling?" This question was objected to, but allowed by the Circuit Judge.

The view taken by the Court of that portion of the Judge's charge which was excepted to renders it unnecessary to state it.

*F. A. Baker,* for plaintiffs in error.

*H. M. & W. E. Cheever,* for defendant in error.

COOLEY CH. J.

The objection to the question put to Louis Conrad, whether a deed and mortgage were given between the parties, has no force. The question did not call for the contents of the instruments, and did not elicit secondary evidence.

The questions put to the same witness, as to the quantity of stone shipped from August 31st to December 1st, and

as to the reason of the Clemens Brothers insisting that the two vessel loads of stone which Conrad had a right to ship should be piled on the dock on the first of December, were clearly irrelevant and properly overruled.

Nor do we perceive any relevancy to the questions put for the purpose of showing that another party beside Conrad was interested in the land described in the deed and contract. Conrad, it appears, contracted to convey the land to the Clemens Brothers, but was to have the right to take stone from the quarry upon it up to a certain time. He has performed his part of the contract, and this suit grows out of the conversion by the Clemens Brothers of certain stone which he claims became his by the contract.

It is immaterial from what source or from how many sources the title was derived which has been conveyed. The right to the stone does not come from any reservation in the deed, but from a contract which gives it to Conrad alone; and even if Conrad were equitably bound to account to some other person for a proportion of the stone, that fact would be immaterial to the present suit. The defendants below asserted no equities against any third party whom they claimed to have an interest, and we discover no analogy between this case and those in which the right to charge an unnamed principal on a contract made by his agent has been upheld.

The question to P. H. Clemens,—"why Conrad and wife were to sign the deed" was entirely immaterial and objectionable on other grounds.

The right to inquire of a witness on cross-examination whether he has not been indicted and convicted of a criminal offense, we regard as settled in this State by the case of *Wilbur v. Flood, 16 Mich., 40.* It is true that in that case the question was, whether the witness had been confined in State prison; not whether he had been convicted; but confinement in State prison presupposes a conviction

CLEMENS ET AL. *v.* CONRAD.

by authority of law, and to justify the one inquiry and not the other would only be to uphold a technical rule, and at the same time point out an easy mode of evading it without in the least obviating the reasons on which it rests. We think the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight, that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent. We prefer the early English rule on this subject: *Priddle's case, Leach C. L. 382; King v. Edwards, 4 T. R. 440;* and for the reasons which were stated in *Wilbur v. Flood.*

Several other assignments of error depend for their force upon the proper construction of the contract under which Conrad was to have possession of the stone quarry until December 1, 1866, with certain right to remove stone afterwards. The stipulation on that subject was as follows: The Clemens Brothers "are to give to the said Conrad permission to quarry on the said premises in the quarry in which he is now quarrying until December 1, next, and to use the dock on the northeast corner of said premises to ship his stone from until said December 1, next. Said Conrad is to commit no waste during said time upon said premises, and to so quarry as to leave upon said dock on the said 1st December next not more than two vessel loads of stone, and the two loads of stone he is to remove as early as convenient during the next spring, after which the entire use and ownership of the dock is to vest in the said" Clemens Brothers.

As we understand this contract, whatever stone was quarried by Conrad previous to December 1, 1866, became his property. He agreed, however, that he would not leave upon the dock on that day more than two loads of stone, and those two loads the other parties agreed he might have until the next spring to remove. We do not discover in this contract any thing from which we can infer an understanding on the part of either party, that the penalty for a failure on the part of Conrad to remove his stone within the time agreed should be a forfeiture of his right thereto. The law certainly would not imply such an understanding where it was not plainly expressed, nor would it favor such a penalty. It is to be presumed that the damages the party injured by a breach of the contract might recover at the hand of a jury, would be adequate compensation for the injury. If Conrad in this case was guilty of any breach of his contract, the remedy of the other party is by action at law, and not by seizing and selling his stone. The charge of the Court below relating to the supposed breach and a supposed waiver thereof, was, in our opinion, entirely immaterial, and could not possibly have injured the plaintiffs in error. The stone in controversy belonged to Conrad under the contract, irrespective of the disputed facts upon which the charge was based.

The plaintiffs in error insist, however, that the contract was improperly admitted in evidence, because not sufficiently stamped under the revenue laws of the United States. The contract, it appears, was written on two pieces of paper pasted together, and was stamped with a single five cent stamp. It was insisted in the court below, that two such stamps were required, and that by the express terms of the revenue law, the instrument could not be admitted or used in evidence without the additional stamp.— *U. S. Stat. 1866 C. 184 §9.* It was not claimed that the omission to tax the instrument sufficiently, arose from any intention to

evade the revenue law, or defraud the Government, or that the instrument was void for the omission, or that Conrad did not acquire by it a right to the stone in controversy if his construction of the contract was the correct one. The position taken would appear to result in this:—that even though the contract be valid, so that the party acquired rights under it, he is not to be permitted to give evidence of those rights in court, if through accident, or mistake, or misconstruction of the statute, he has failed to pay to the Government the full amount of tax legally demandable upon such instruments.

The Circuit Judge held that only one five cent stamp was required upon a complete agreement, and that it was immaterial upon how many pieces of paper the agreement was written. We are not satisfied, however, that this construction of the act of Congress is the correct one, though we do not deem it important to express a definite opinion upon that point. Neither do we propose to raise or discuss the questions of the power of Congress to declare the contracts of parties void for a failure to affix the proper revenue stamps. The power to tax, to select the objects of taxation, and to make choice of the proper means to render the power fully effective, is one which in every sovereignty must be very broad and ample, inasmuch as the perpetuity of the Government depends upon the power being adequate to all possible emergencies. Of the authority in Congress to impose stamp duties, and to compel their payment by such penalties as the wisdom of that body may devise, we make not the least question. It is a well recognized and legitimate mode of taxation, and of the policy of making choice of it instead of some other, Congress is the sole judge.

To make an instrument inadmissible in evidence because not sufficiently stamped is, however, quite a different thing from imposing penalties for a breach of the revenue laws.

The latter punishes the guilty party or compels him to perform his duty to the Government; the former imposes what may be sometimes equivalent to a forfeiture of rights upon any party, guilty or innocent, who chances to be so circumstanced that he cannot make a showing of his rights in court without the production of the unstamped instrument. For the statute does not preclude the reception of the instrument in evidence in those cases only, in which the parties thereto may be parties in litigation, but in all cases whatsoever, in which, whether as the foundation of the suit, or for some collateral purpose it may be important to make some inquiry concerning them. This provision of the law of Congress is therefore not only highly penal, but it visits with its consequences alike the innocent and the guilty, and is wanting in the exceptions which protect those guiltless of intentional wrong, when the revenue laws are sought to be enforced in other modes.

A law so highly penal, it is to be presumed has been so framed as clearly to point out all the cases to which it was designed to apply, so as to leave nothing to inference. In attempting properly to construe it, it is proper to bear in mind the position of the body which enacted it relatively to the different legal tribunals of the country. Congress creates the Courts which operate within the sphere of federal sovereignty, and administer the judicial power conferred by the Constitution of the United States. For them it prescribes rules of evidence, and may establish a course of practice. It has no such general power as regards the State Courts. Those Courts have another origin, and their rules of evidence, and courses of proceeding are prescribed by a different legislative body. Waiving, in the present case, any discussion of the question whether the State Courts are not agencies of State Government which are beyond the sphere of the taxing power of the nation, and fully at liberty to investigate in their own modes, under the laws

of the State, the questions of fact which are put in issue before them, we think it a just and reasonable interpretation of the law of Congress, that the Courts, which are precluded from receiving unstamped instruments in evidence, are only the federal Courts, which are created under the General Government, and for which Congress has general power to prescribe rules of evidence. In other words, we think that a rule of evidence laid down in general terms, is to be understood as applicable to those Courts only for which the Legislature prescribing it has general power to make rules, and not to other Courts not expressly named, over which it has no such general power, and with whose proceedings it could interfere, if at all, only in exceptional cases.—*Carpenter v. Snelling, 97 Mass. 452.*

We discover no error in the record, and the judgment must be affirmed with costs.

CAMPBELL AND CHRISTIANCY JJ. concurred.

GRAVES J.

As I am unable to agree with my brethren in the result they have reached, I purpose to state some of the grounds upon which I think the judgment below should be reversed.

It appears that on the last day of August, 1866 the parties entered into a contract in writing which was followed by a conveyance in pursuance of it, in about two weeks thereafter. The contract was in the following terms:—
" Item one, The said Conrad agrees to sell to the said Milo Clemens, William A. Clemens and Phineas H. Clemen s the undivided half of lot 25 in first section of Danbury Township, Ottawa County, Ohio, for the sum of six thousand dollars payable, $500 when said Clemens take possession and the remainder in equal instalments, payable in 1, 2, 3, 4, 5, 6, 7 and 8 years, with interest and to convey

said premises to said Clemens, by good warranty deed to be executed and signed by George Michael and wife and Louis Conrad and wife.

Item two, The said Milo Clemens, William A. Clemens and Phineas H. Clemens agree to purchase said premises at the price named in " item one," and to make the payments as therein specified and to secure the payment of the purchase money by mortgage on the whole of said lot 25, and they are to give to the said Conrad permission to quarry on the said premises, in the quarry in which he is now quarrying until December first next, and to use the dock on the north east corner of said premises to ship his stone from until said December first next. Said Conrad is to commit no waste during said time upon said premises, *and to so quarry* as to leave upon said *dock* on the said first of December next not more than two vessel loads of . stone, and the two loads of stone he is to remove as early as convenient during the next spring, after which the entire use and ownership of the dock is to vest in the said Milo Clemens, William A. Clemens and Phineas H. Clemens.

The most difficult question in the case, in the view I take of it, arose upon the interpretation of this contract, it being claimed on the part of Conrad, that he was entitled to continue quarrying and carrying off stone until December first, and that *after that* time he was also entitled to remove two loads of quarried stone, though they should be in the quarry, and though possession should have been given to Clemens.

The plaintiffs in error maintained, however, that the agreement neither gave or secured any right to Conrad to take any quarried stone from the quarry after December first, and after they were put in possession. These different views being pressed at the trial, the plaintiffs in error asked the Court to advise the jury that Conrad could not recover

for the stone which was lying in the quarry when possession was given on the evening of the 3d of December, and that if they should find that he was permitted to take away all the stone he had on the dock at the time, they should find for the defendants.

This instruction the Court declined to give but advised the jury "that it made no difference under the contract, whether at the time possession was given the stone were on the dock or in the quarry."

I think the effect of this was to leave the case to the jury upon an erroneous construction of the contract.

In making the agreement the plaintiffs in error were treating for a quarry already opened, and being worked, and supplied with a dock from which to load stone for carriage by water, and it is reasonable to suppose that they wished to acquire the quarry in order to work it.

It does not appear that there was any other practicable course for the removal of the stone than that over the dock, or that the quarry itself could be conveniently worked if occupied by any considerable quantity of quarried stone. In any event it was natural for the purchasers to desire that the work should not be encumbered by an indefinite possessory right in the vendor, and no such right could have been contemplated, without being expressly provided for and carefully defined.

It is claimed, nevertheless, by Conrad, that he had the right to leave two vessel loads of stone in the quarry, and to enter and remove them after the purchasers would be entitled to the general possession, and as owners authorized to work the quarry.

When he bargained away the property he must be taken, *prima facie*, to have intended to include every right and interest which he could part with and did not except, and unless the stipulations in his favor fairly include the right he sets up, it ought not to be sustained.

By the agreement he stipulated for the right to continue getting out stone until December first, 1866, and no longer, and for the right to use the dock until that time to ship the stone from.   He also stipulated for the right to leave two loads of stone on the dock at said time and for the privilege of removing the same two loads of stone from the dock as early as convenient in the spring of 1867. These were exceptions out of the general right transferred by Conrad to plaintiffs in error, and it was expressly provided that in using the work until December first, the defendant in error should commit no waste, and that he should *so* quarry as to leave no more than two vessel loads on the dock at the time last named.

It will be observed that there is no stipulation giving the right to remove any stone from the quarry after December first, or the right to keep any stone in the quarry after that time, or the right to remove any, after that period, except by the way of the dock.

It will likewise be observed that the only place of deposit for Conrad's stone after December first, allowed by the terms of the contract was the dock, and also that he was bound to carry on the works in such manner up to that time as to leave not more than two vessel loads even there.   By these arrangements, it may be fairly urged that the parties contemplated that the stone which the defendant in error might quarry would be removed by way of the dock, and that when it was expressly agreed that but two loads should be left there, they supposed they had certainly guarded against any claim by Conrad to occupy the quarry with them.

But, if it be conceded, that this express stipulation is not open to that construction, the effect of the transaction must, I think, necessitate the same result.

As the defendant in error disposed of all rights which he did not except, and as any right excepted could only be

asserted consistently with the nature and extent of the grant on the one hand, and without exceeding the bounds prescribed to the excepted rights by the terms used to describe it on the other, I think he could not make the two loads his property by barely separating them from the mass. It was as much a condition of his privilege that he should have the two loads out of the quarry, and as essential to the completion of his right to them as it was that they should be severed from the ledge. I think this plainly appears from the terms and legal incidents of the bargain; and that in substance the right of Conrad to the stone, left in the quarry, was no better than if they had been but partly separated from the mass.

On the cross-examination of a witness for the plaintiffs in error, he was asked if he had not been indicted at Sandusky, in 1865, for smuggling, and if he was not convicted, and both questions were objected to by plaintiffs in error, on the ground that they supposed the existence of better evidence of the facts called for; but the objection was overruled, and the witness stated 'that he had been convicted of smuggling.

This ruling is supposed to be supported by *Wilbur v. Flood, 16 Mich., 40*, but I think the cases are quite distinguishable. In the case cited, the defendent on cross-examination, was asked if he had ever been confined in the State prison, and my brethren were of opinion that the question was not objectionable as an offer to prove by parol what rested in record evidence. It is true that the opinion of my brother Campbell may seem to have gone further than this, but the point decided did not. Whether the witness had been confined in State's prison, was a fact of personal experience and involving a question of identity, and no higher or better evidence in contemplation of law could be furnished than the parol evidence of the witness. If it be said that the question implied a confinement under

sentence, and hence that an affirmative answer must have tended to prove a conviction; the reply is that the circumstance that a piece of evidence might tend by way of argument or inference to prove a fact not lawfully susceptible of proof by such evidence, would be no ground for excluding it, if admissible for another purpose, nor could its admission for the legitimate purpose establish its application to the illegitimate one.

In deciding the point in *Wilbur v. Flood* I think the Court did not purpose to assume that the nature of the evidence requisite to show a conviction was at all involved, since the raising of the question which was there decided, did not depend on the presence or absence of record evidence of conviction, but was wholly independent of any consideration of that kind. The point was not whether the witness had been convicted, but whether the question put to him supposed any higher attainable evidence of his own confinement than his own testimony, and the case on that branch of it, is only authority in my judgment, for a negative answer to that proposition. Indeed, such seems to be the necessary deduction, since it does not appear to have been claimed by counsel, or advanced by my brethren, that the settled distinction between primary and secondary evidence was inapplicable to cross examination.

In the present case the party resorted in the first instance to verbal testimony to prove the proceedings and judgment of a court of record, and not a distinct and independent fact of personal experience like that of detention in a particular place. Whether the witness had been indicted and convicted was an inquiry which involved several considerations of legal import, the technical nature of which, he could not be supposed to know, while the proof which that inquiry called for could be legally made by exhibiting the record, or if necessary by submitting evidence of its contents. The plaintiffs in error were entitled to

CLEMENS ET AL. *v.* CONRAD.

insist, that the credibility of their witness should not be assailed by a species of proof not authorized by the rules of evidence; and in my view it was not competent under any circumstances to require the witness to state, what at best could be nothing more than his inference in a matter of law, and, in any aspect of the case, that the contents of the record were not provable by any sort of verbal testimony so long as better evidence was not shown to be unattainable.

The general rule is undisputed, and the necessities of cross-examination have not hitherto been deemed sufficient to dispense with it.

If we now discard the principle upon an assumption in favor of the party cross-examining, that he cannot prepare before hand to meet its requirements, we can only do so by imperiling the existence of the rule, and by ignoring the reasons for its enforcement which are plainly apparent in the uncertainty and danger of personal and unprofessional testimony in such a case, and also quite probably existing in the inabilility of the party calling the witness to anticipate an attack of the mode and kind made in this action.

*The King v. The Inhabitants of Castell Careinion*, 8 *East* 77 ; *Hall v. Brown*, 30 *Conn.* 551 ; *Doe ex dem. Sutton v. Reagan*, 5 *Blackf.* 217, 219 ; *Newcomb v. Griswold*, 24 *N. Y.* 298 ; *Clement v. Brooks*, 13 *N. H.* 92 ; *Commonwealth v. Quin*, 5 *Gray* 478.

I agree with the Chief Justice, and for the reason given by him, that the objection to the admission of the contract based upon the Stamp Act was untenable.