THE STATE OF NEW JERSEY, DEFENDANT IN ERROR,
v. LEONARD C. HAND, PLAINTIFF IN ERROR.

Submitted December 3, 1903—Decided August 4, 1904.

1. An amendment to the Oyster law, approved March 22d, 1901
(*Pamph. L.*, *p.* 307), known as the "Rough Cull" law, which
makes it a misdemeanor for any person engaged in dredging
oysters from any of the beds and grounds above the "southwest
line, under the waters of Delaware river, Delaware bay and
Maurice river cove," to neglect or refuse to cull such oysters,
oyster shells and other materials as soon as they are emptied out
of the dredges on the deck of the vessel, and before they are
shoveled back from that part of the deck, so closely that three
bushels thereof taken from any portion of a deck load after the
same shall have been shoveled back from that part of the deck,
&c., shall not contain more than fifteen per centum of shells and
other materials, was held sufficient to cover an alleged violation
thereof where the baskets of oysters for the test were taken
from a part of such deck load which had been removed from the
deck into the hold of the vessel before the officers in pursuit had
reached the same.

2. A construction of a statute which would have the effect of plac-
ing it in the power of a transgressor to defeat, by an evasion,
the object and purpose of the law, will not be favored.

3. The failure to caution a prisoner, when he appears before a mag-
istrate and makes incriminating statements in answer to ques-
tions, is no bar to their admission as evidence so long as it ap-
pears that the statements were voluntary, and not the product
of hope or fear incited by some word or act of those in authority.

On error to the Cumberland Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON,
HENDRICKSON and SWAYZE.

For the plaintiff in error, *Samuel Iredell* and *Howard
Carrow.*

For the state, *J. Hampton Fithian* and *Walter H. Bacon.*

The opinion of the court was delivered by

HENDRICKSON, J. This writ brings up for review the entire record of the conviction of the defendant upon an indictment in the Cumberland Quarter Sessions for the violation of an amendment to the Oyster law, approved March 22d, 1901 (*Pamph. L., p.* 307), known as the "Rough Cull" law.

One of the errors assigned and urged as a ground for reversal is the refusal to quash the indictment. One of the alleged infirmities in the indictment is stated by counsel in this way: "The indictment charges no crime; it really charges that a crime was not committed, for it says that the three bushels of oysters did not contain more than fifteen per centum of shells and other material." The pertinent words of the act are: "All such oysters, oyster shells and other material shall be culled as aforesaid so closely that three bushels thereof taken from any portion of a deck load of oysters, after the same shall have been shoveled back from that part of the deck used for emptying the dredges and tongs aforesaid, shall not contain more than fifteen per centum of shells and other material." And the neglect or refusal of any person to cull as aforesaid such oysters, oyster shells and other material is declared to be a misdemeanor. The indictment charges, in that particular, that the defendant did then and there, &c., fail, neglect and refuse to cull the said oysters, &c., so closely that three bushels thereof, &c., did not contain more than fifteen per centum of shells and other materials, &c. The charge plainly follows the words of the act, and that is sufficient. Another objection to the form of the indictment is this: The statute says the culling shall be done *as soon* as the same are emptied out of the dredges and tongs, and that all shells, &c., shall be *immediately* thrown back upon the beds, &c., from which the same were taken. The indictment fails to use the words "as soon" and "immediately" in charging these failures of duty. But we think the indictment charges at least the equivalent of these expressions.

The indictment sets out the various acts and failures of

duty which constitute the offence, as occurring consecutively in the order named in the statute. The day and date of the first fact alleged is given, and the others are stated as having "then and there" occurred. When this is so, it is to be inferred that the facts alleged were co-existent—occurring at the same point of time. 10 *Am. & Eng. Encycl. L.* 588.

The next error alleged is the admission in evidence of an alleged confession by the defendant made before the justice of the peace, when he was first brought in under the warrant. Upon that occasion the justice read the complaint to the prisoner and asked if he was guilty or not guilty. The reply was "I am guilty." There was nothing said to the prisoner as preliminary to this question by way of caution or otherwise. It is urged that he should have been cautioned.

It is the duty of the court to ascertain that such incriminating statements, made by a prisoner in custody, when offered in evidence, were voluntary and not the product of hope or fear, induced by those in authority over him. In the performance of this duty the learned trial judge, before admitting the evidence, gave to the counsel of the prisoner an opportunity to cross-examine the witness, and to offer testimony by the defendant or others upon the question of whether the statement or confession was induced by the influence of hope or fear. This opportunity was declined by counsel with the remark that the defence did not claim anything of the kind. And since there were no circumstances or other evidence in proof to indicate that the confession was obtained by illicit practices of any character, the determination of the trial judge that the confession was voluntary was entirely justified and the evidence was properly admitted. *State* v. *Hernia (Court of Errors)*, 39 *Vroom* 299; *State* v. *Hill*, 36 *Id.* 626; *State* v. *Young*, 38 *Id.* 223; *Roesel* v. *State*, 33 *Id.* 216.

Another objection to this evidence was that the admission was brought out in answer to a question by the justice which he had no right to ask. But the settled rule is, that a con-

fession is admissible, though it is elicited by questions, whether put to the prisoner by a magistrate, officer or private person; and the form of the question is immaterial to the admissibility, even though it assumes the prisoner's guilt. 1 *Greenl. Evid.* 229; *Roesel* v. *State, supra.* Nor does the fact that the complaint itself was not put in evidence render the confession inadmissible. The defendant's counsel did not ask to have the complaint put in evidence, as he had a right to do. That the state did not offer it, we think is not error. When the state offers in evidence one part of the conversation of a prisoner as proof of a confession, the prisoner has a right to lay before the court the whole of what was said in that conversation. 1 *Greenl. Evid.* 218.

It is urged that the refusal to direct a verdict of acquittal at the close of the case was error. Whether such a motion accords with proper practice was considered but not decided in *Burnett* v. *State,* 33 *Vroom* 510. Assuming the regularity of the motion, the state of the evidence at the close did not warrant such a direction.

It is contended that there was no proof that the shells were taken above the southwest line. But the contrary is the fact. The defendant testified that, on the day named, he was dredging for oysters north of the southwest line, and that, at Beadon's Point, which is above the southwest line, he dredged and emptied upon the deck one hundred and twenty baskets of oysters. He also testified that he admitted to saying before the magistrate, "I can't help be guilty of these shells that he measured." It is further urged that the evidence, that the oysters measured were taken from the hold of the boat, does not sustain the requirement of the statute "that three bushels thereof, taken from said deck load of oysters aforesaid, after the same had been shoveled back as aforesaid from that part of the deck of said vessel used for emptying the dredges and tongs aforesaid, did not contain more," &c.

The evidence of the defendant was that he culled the oysters as he dredged, and deposited them upon the deck, and threw the trash overboard; he would then throw the

oysters back, and after awhile they would get in his way, and he would shovel them in the baskets, and they were then dumped into the forward hold of the vessel.

We are unable to agree with the defendant's contention that the oysters having been dumped into the hold from the deck before the officers had reached the boat to examine the contents and make a test, the statute no longer covers the case and the defendant could not be convicted. To give the statute this construction would be putting it in the power of anyone engaged in such unlawful dredging to defeat the law and escape punishment by his own act in dumping the deck load of oysters into the hold as soon as they were culled. But we think this would be to encourage a palpable evasion of the law sufficiently plain in its language and meaning to cover the offence as here proved. A construction that would aid such evasions of a statute is not favored. 26 *Am. & Eng. Encycl.* (*2d ed.*) 657. The gravamen of the offence plainly is the refusal or neglect to cull the oysters caught above the southwest line as closely as the statute requires—the baskets of oysters for the test to be taken from the deck load after they have been shoveled back.

The question whether the baskets of oysters for the test, whether taken from a part of the deck or from the hold wherein they had been removed, were oysters dredged within the prohibited limits, would be, as it was in this case, a question for the jury. Upon this and other questions of fact submitted we think there was evidence sufficient to support the verdict. The result is that the judgment below will be affirmed, with costs.