STATE OF CONNECTICUT *vs.* FRANK PALKO.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 11th—decided July 30th, 1936.

*William H. Comley,* State's Attorney, with whom, on the brief, was *Lorin W. Willis,* Assistant State's Attorney, for the appellant (State).

*David Goldstein,* with whom were *Johnson Stoddard,* Public Defender, and *William Dorkin,* for the appellee (defendant).

BROWN, J. By its brief the State has limited the errors assigned upon this appeal to six, the first relating to the court's charge to the jury, and the others to rulings upon evidence. Upon the trial the State offered evidence to prove and claimed to have proved these facts material to the claimed error in the charge: Late in the evening of September 29th, 1935, the accused, taking with him a revolver which he had possessed since obtaining it from Ryan's Tavern several months before, with Frank Burke, left their apartment at ♯ 590 Fairfield Avenue in Bridgeport and going to Gilman's Music Store at ♯ 243 Fairfield Avenue, just after midnight broke in the show window thereof, from which each seized and carried away a radio, departing by different routes on the return to their apartment. In breaking the plate glass window with the revolver, the grips thereof were broken off and were found there shortly after. When the accused had reached a point on the southerly side of Golden Hill Street, an officer stepped out from each side of a police car which had drawn up to him, the one on the left laying his hands on him and asking where he was going with the radio. Thereupon the accused, who was carrying his revolver in the sleeve of his coat, let it drop down into his hand and fired one shot into this officer, and then turning as the other came near, fired a shot into him. He then ran west some fifty feet, where another police car drew up, and as an officer started to get out, he fired a shot into it which lodged in the cushions of the rear seat. Dropping the radio, the accused then ran on by streets and back yards toward his apartment, pausing behind a wall to re-

cover his breath and reload his revolver, after which he walked the rest of the way. Upon his arrival, he told Thomas Iwanicki that as he had approached the apartment, another police car had come up and that if either of the policemen in it had "made a break" for him, he would have shot them too. At this time, shortly after 1 o'clock in the morning, and also between 2 and half past that morning, the accused appeared to be sober. Wilfred Walker, one of the officers shot, and Thomas J. Kearney, the other, for whose murder the accused was on trial in this proceeding, each died within a few hours from his wound inflicted by the accused. At the time of the killing the accused was on parole from Elmira Reformatory where he had been sentenced for rape.

The accused offered evidence to prove and claimed to have proved these facts material in this connection: On September 29th, 1935, the accused, who shared an apartment on Fairfield Avenue with Frank Burke and Thomas Evans, knew this avenue to be well illuminated at night and that police headquarters was located thereon. From about 3 o'clock on that afternoon the accused and Burke continued to drink rye whiskey in the apartment until 6 o'clock when they went out and had a sandwich for supper, and then returned for a few minutes, doing more drinking. After visiting two cafes, where the accused drank four glasses of beer, they returned to the apartment at 8 o'clock and started to drink again. Shortly thereafter, the accused became intoxicated and does not recall any of the circumstances relating to the breaking and entering into Gilman's Music Store, or the shooting of the police officers. And he became so intoxicated by shortly after 9 o'clock that he does not recall seeing Jack Burke, who came to the apartment shortly before 3 o'clock on the morning of September 30th, 1935, or

have any recollection of anything further that oc-
curred until the police arrived in his room at that
hour. The accused first suspected he might be in-
volved in any way in the breaking and entering or in
the shooting of the two officers, at half past 6 that
morning when Evans told him and Frank Burke that
they were involved therein. It was a part of the
accused's revolver which had been in his possession
prior to September 29th, 1935, which was found in
the entrance of Gilman's Music Store on the morning
of the following day.

The State contends that upon the situation so dis-
closed, the court's charge concerning the essential ele-
ments of premeditation and deliberation in the crime
of first degree murder was inadequate, inaccurate, and
misleading to the jury. Its claim is that while the
definitions used by the court in this connection, for
the most part at least, may be supported by authority,
and are properly applicable to the case of the seem-
ingly law-abiding citizen who for motives difficult to
trace and under impulses open to contradictory inter-
pretation, kills an enemy or a friend, involving some
transition, some traceable mental reaction, from a man
to whom murder is an unthought of deed to one intent
upon killing, the same does not hold true in such case
as this, where the State's evidence discloses a gunman
setting out armed with a loaded revolver to commit
burglary, prepared in advance to kill if necessary
either to accomplish the crime or to make good his
escape. Obviously an instruction sufficient in the
former case might be entirely inadequate for the lat-
ter. The question is whether the court's charge as
given was sufficient upon these issues.

The trial court in a general explanation of the ele-
ments of first degree murder instructed the jury that
to constitute premeditation there must be between

the time the perpetrator forms an intention to kill and the instant when he carries out such intention "an interval of time during which he gave thought to and reflected upon his purpose sufficiently to know what he was doing and what the probable effect of his doing it would be upon his victim. It will occur to you that where a man suddenly makes up his mind to kill another and instantly shoots or otherwise fatally injures him, there is no opportunity for such consideration of what he is doing to enable him to comprehend the nature of his act or the result of it to the object of his attack. In such case there can be no premeditation since intent to kill and the performance of the act of killing coincide and practically take place at the same instant." The trial court then repeated the charge as to the necessity of an interval of time elapsing between the formation of the intent and the commission of the crime, adding that the court does not attempt to say that any particular period of time shall have elapsed provided it is sufficient to afford the perpetrator sufficient opportunity for thought as to his purpose, and that in some cases this may be a very short time and in others a longer period.

In view of the claims of the parties the effect of this charge, particularly in the use of the word "reflection" and the emphasis placed by the trial court upon the application of the principle as applied to a sudden killing, would tend to center the attention of the jury upon the brief interval that passed between the time when the officer placed his hand upon the arm of the accused and the shooting. Had the trial court gone on to give to the jury adequate instructions as to the application of the general principles it had stated, to the evidence in this case, this portion of the charge might not have constituted reversible error. Later in

the charge the court did refer to the State's claim that the fact that the accused at the time of the shooting was escaping with stolen property afforded ground for the inference that it was not done upon sudden impulse without opportunity for reflection, but rather as the outcome of a formed design to shoot anyone who might interfere with his escape, with full opportunity to comprehend the character and probable result of such a purpose and that the shooting of Kearney was but the result of his alertness in carrying out this plan. But this statement of the claim of the State omitted the vital factor that the defendant had set out armed to commit a crime, nor did it in any way comment on this claim or the bearing which the facts would have if the jury found them proven, upon the issue of premeditation.

Thereafter the trial court stated that it was in evidence that a car stopped beside the defendant, somebody alighted and put his hand on the shoulder of the accused and asked where he was going with the radio; and it then charged the jury as follows: "Now, I have already told you, gentlemen, that the time required to form a specific intent to kill, to premeditate and to deliberate, may be longer, it may be short, but it must be sufficient for the person involved to know what kind of an act he was about to perform, and its probable effect upon his victim. Now, I am only suggesting this to you, I am not suggesting any conclusion to you, but I am suggesting to you that you consider the hypothesis that I suggested to you, whether or not, if this statement is true, that the accused saw the scout car as it approached him, before it stopped, and as he says: 'Then I let the gun slip from my sleeve into my hand, and I turned around and fired.' Now, gentlemen, again, I am suggesting no conclusion to you, but if you find the facts established, and whether

they are established or not you are to decide, and if you find them established you should consider further the length of time involved in these operations; whether or not there is any evidence in the fact that the gun slipped from his sleeve into his hand, after seeing the car stop, which would tend to establish what the intention of the accused was, and whether or not he had the specific intention to kill, and to premeditate, bearing in mind always that the fact must be established beyond a reasonable doubt."

The effect of this charge could hardly have been other than to leave with the jury the impression that in determining whether the murder was premeditated they were to confine their attention to the brief interval of time between the moment when the officer accosted the defendant and the shooting. It is of course sound law that an interval of time sufficient for thought as well as action must exist, but it was error for the trial court to leave with the jury the impression that in the case of an armed burglar who is stopped in his efforts to escape with the stolen property, in determining whether or not there was premeditation they are to regard only the incalculable moment between his realization of the threat of arrest and the pulling of the trigger ready to his hand for that very purpose. He has gone out for the double purpose to burglarize and to escape. It would be as absurd to say that whether he plans to steal is to be determined only as of the moment when he has his hand on the loot, as to say that only the interval of time between the moment when the criminal is accosted by the officer and the instant of the shooting is to be considered in determining whether the crime was premeditated. The charge in thus confining the attention of the jury in determining whether premeditation existed to this brief moment of time, and giving

no instructions as to the significance of the conduct of the accused in setting out armed under the circumstances as claimed by the State was inadequate for their guidance. From it they could well have understood that even though they found the killing occurred as contended by the State it would not constitute murder in the first degree. Upon quite similar facts, in the case of a criminal setting out armed to commit a crime and secure his retreat, who in the course of the enterprise killed an officer attempting to arrest him and was found guilty by the jury of murder in the first degree, we said that "the verdict reached by the jury was the only verdict reasoning minds could have reasonably reached upon the evidence." *State* v. *Chapman,* 103 Conn. 453, 469, 130 Atl. 899; see also *State* v. *Simborski,* 120 Conn. 624, 629, 182 Atl. 221. There was reversible error in the charge as to premeditation.

The State claims that the court erred in excluding on its cross-examination of the accused, questions as to his possession of the revolver with which he shot Kearney. These were claimed to show that the accused had obtained it by burglarizing Ryan's Tavern, to affect his credibility. The accused by taking the stand in his own behalf waived the privileges accorded him under the law as a person accused of crime, and became as any other witness and subject to the same tests of cross-examination. *Fitzpatrick* v. *United States,* 178 U. S. 304, 315, 316, 20 Sup. Ct. 994. He therefore had rendered himself subject to cross-examination upon such acts of misconduct as indicate a lack of veracity; *Shailer* v. *Bullock,* 78 Conn. 65, 70, 61 Atl. 65; and that such cross-examination might establish that the accused had been found guilty of another crime is no reason for its exclusion. *Harper* v. *State,* 106 Ohio St. 481, 140 N. E. 364; 3 Wharton, Criminal

Evidence (11th Ed.) § 1387. The commission of statutory burglary falls within this category. This crime is one involving moral turpitude. *Drazen* v. *New Haven Taxicab Co.*, 95 Conn. 500, 111 Atl. 861. This latter fact, however, obviously affords no meritorious basis for the suggestion made by counsel for the accused in objecting to these questions, that because of § 5582 of the General Statutes, providing that a witness is not disqualified because of conviction of crime but that such conviction may be shown to affect his credit, such fact could only be brought out by offering the record of his conviction. The purpose of the statute was to remove the common-law disqualification of a witness because of a conviction of crime with a provision, however, that such conviction might be shown to affect his credit. It has nothing to do with the method by which such conviction shall be shown. The record indicates that the court adopted this suggestion as a reason for excluding the questions. This was error. The admission of such evidence is in a measure within the discretion of the court. *Spiro* v. *Nitkin*, 72 Conn. 202, 205, 44 Atl. 13. While we should hesitate to hold that the court's ruling, upon this record, constituted a proper exercise of its discretion, the adoption of the above reason therefor of itself rendered it erroneous.

The State further claims that the court erred in excluding its question on cross-examination of the accused, seeking to bring out that the loaded revolver and money found upon his person when arrested in Buffalo, New York, on October 29th, 1935, were obtained by a robbery committed by him subsequent to the killing of Kearney, for the purpose of affecting his credibility. Under the rule in *Shailer* v. *Bullock*, supra, this evidence was admissible for the purpose

claimed, and upon the whole situation shown by the record, the court's exclusion of it constituted error.

The court's refusal to permit the State to show through its witness Sergeant Carroll, who participated in the arrest of the accused at Buffalo, the circumstances attending the arrest and what the accused had upon his person at the time, is also assigned as error. It was conceded that the accused had fled following the shooting of Kearney, and that he was in the course of that flight and evading arrest when apprehended by Carroll and the other officers at Buffalo, and that at the time he had in his possession a revolver, a blackjack and a substantial sum of money, though he had had none of these identical articles at the time of the crime here charged. The State claimed the right to prove these facts as bearing upon the conduct and guilty knowledge of the accused. Upon the whole situation shown by this record a majority of the court hold that the trial court's exclusion of this evidence was within its discretion.

The State claims that the court erred in excluding the testimony of its witness Officer Bray of a confession made by the accused after his arrest in Buffalo. He made the statement while incarcerated in the police station, after the officer had told him the police had obtained the entire story from Evans and Jack Burke and wife who were locked up in Bridgeport, which was untrue, and that he had better tell the truth. He was not cautioned that he did not have to say anything that might be used against him. The officer also testified that no promise of reward or threat was made to the accused to induce the statement. His testimony was the only evidence upon the subject. The record and the accused's brief indicate four grounds relied upon for excluding the evidence. The first, because it was made while he was in custody, is

not based upon authority. The established rule is to the contrary. *Commonwealth* v. *Chance,* 174 Mass. 245, 249, 54 N. E. 551; *People* v. *Owen,* 154 Mich. 571, 118 N. W. 590; *Balbo* v. *People,* 80 N. Y. 484; *Hopt* v. *Utah,* 110 U. S. 574, 4 Sup. Ct. 202; 2 Wharton, Op. Cit., § 610; 1 R. C. L. 565, § 111; 16 C. J. 719, § 1473. The same is true of the second, that he was not warned as to his constitutional rights. The test of admissibility is whether the confession was voluntary, and not whether the accused was well advised. *State* v. *Castelli,* 92 Conn. 58, 67, 101 Atl. 476; *State* v. *Hand,* 71 N. J. L. 137, 58 Atl. 641; 2 Wharton, Op. Cit. § 627; 16 C. J. 723, § 1482. The third, because the officer said to the accused that he had better tell the truth, is contrary to the great weight of better reasoned authority. *State* v. *Gee Jon,* 46 Nev. 418, 428, 211 Pac. 676, 678, and cases cited; 2 Wharton, Op. Cit. § 625; 1 R. C. L. 555, § 102; 16 C. J. 721, § 1476. As has been well said, such advice "cannot possibly vitiate the confession, since by hypothesis the worst that it can evoke is the truth, and there is thus no risk of accepting a false confession." 2 Wigmore, Evidence (2d Ed.) § 832. The fourth is because the officer represented that certain parties connected with the affair had made statements and were under arrest.

One claim thereunder is that since these untrue statements induced the accused to confess, the confession was involuntary and so inadmissible. This is not the law. "The object of evidence is to get at the truth, and a trick which has no tendency to produce a confession except one in accordance with truth is always admissible." *Commonwealth* v. *Cressinger,* 193 Pa. St. 326, 337, 44 Atl. 433. See also *State* v. *Willis,* 71 Conn. 293, 307, 41 Atl. 820; *Price* v. *State,* 18 Ohio St. 418; *Fife* v. *Commonwealth,* 29 Pa. St. 429, 435; 2 Wigmore, Evidence (2d Ed.) § 841; 2

Wharton, Op. Cit., § 623. The other is that since he may have made the confession in order to assume responsibility and exonerate Frank Burke, it is inadmissible. But the rule is well established that one's motive in confessing is of no importance, provided it does not result from threats, fear, or promise made by persons in actual or seeming authority. *Jones* v. *State*, 18 Ga. App. 310, 89 S. E. 347; *State* v. *Griffin*, 48 La. Ann. 1409, 20 So. 905; *State* v. *Staley*, 14 Minn. 105, 113; 16 C. J. 719, § 1470. Furthermore, the court did not find, and could not reasonably have found upon this record, that Palko confessed because of his promise to assume the blame. Nor is there anything to indicate that his alleged assumption of guilt was not based upon actual guilt. His defense involved no affirmation of innocence of the act of firing the fatal shot, but was confined to one of no knowledge thereof by reason of intoxication.

The court in excluding the confession did not detail all of its reasons therefor. It did, however, suggest as such, the accused's incarceration, his claimed promise to take the responsibility, the false statements made by Bray, "and all the other surrounding circumstances." Although such a ruling is an exercise of the court's discretion, a question of duty is involved, and its action is therefore reviewable upon appeal. *State* v. *Willis*, 71 Conn. 293, 313, 41 Atl. 820; *State* v. *DiBattista*, 110 Conn. 549, 563, 148 Atl. 664. In view of the undisputed evidence that nothing occurred in obtaining this confession to render it involuntary, and of the court's reliance in part at least upon legal principles which were incorrect, as we have above indicated, its exclusion of the evidence was erroneous. Containing, as the confession did, a detailed recital, not only of the fatal shooting, but of all of Palko's other acts on the night in question, its importance to

the State's case to refute his defense of intoxication rendering him totally oblivious throughout this period, is apparent. Nor was this obviated by the testimony of Jack Burke and Evans, that the accused had admitted to them the doing of these acts, for the jury might well have disbelieved them, particularly in view of the court's comment in the charge upon their testimony, but found the confession to be true. This ruling constituted reversible error.

In view of our conclusion that the confession should have been received in evidence, the remaining error assigned, relating to the court's exclusion of cross-examination of the accused upon facts contained in the confession, becomes immaterial.

There is error and a new trial is ordered.

In this opinion all the judges concurred, except that MALTBIE, C. J., and BROWN, J., were of the opinion that it was error to exclude the evidence concerning the arrest of the defendant, and HINMAN and AVERY, Js., dissented from the decision that the confession made by the accused should have been admitted in evidence.