STATE OF CONNECTICUT *v.* JOHN ENGLISH, JR.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 4, 1945—decided February 13, 1946.

*Thomas R. Robinson,* public defender, for the appellant (defendant).

*Arthur T. Gorman,* assistant state's attorney, with whom, on the brief, was *Abraham S. Ullman,* state's attorney, for the appellee (state).

ELLS, J.  The information charged that the defendant at New Haven in the night season broke and entered a building known as St. John's R.C. Church Rectory, with intent to commit the crime of theft therein, and that in so doing he committed an assault and used force and violence.  He was found guilty and has appealed.  He assigned several errors in the charge, but as he made no objection to it at its conclusion these assignments present nothing for our consideration.  Practice Book § 156.  The state, in its brief, concedes that the information did not charge com-

mon-law burglary but a violation of § 6097 of the
General Statutes, which provides a punishment for
breaking and entering in the night season, with intent
to commit a crime therein, a building in the posses-
sion of another used as a place for the custody of prop-
erty, and of § 6100, which provides a more severe pen-
alty where personal abuse, force or violence is used in
committing that crime. The principal claim of the
defendant is that, upon the evidence, the jury could
not reasonably find that he violated § 6097, but that
the crime he committed, if any, was common-law
burglary, which is penalized by § 6091 of the General
Statutes.

The jury could reasonably have found these facts:
On the first floor of the rectory there were several
rooms, including a dining room, and across the hall
from it a room known as a counting room, which con-
tained a counting machine used for the separation,
counting and wrapping of coins obtained from collec-
tions and from various church activities. The room
also contained books and chairs, and at times chalices
were kept there. During the daytime persons visited
the rectory frequently for various purposes and were
received by the priest in charge. Four priests, in-
cluding the Reverend John J. Reilly, were in resi-
dence there, and their bedrooms were located on the
upper floors.

During the early evening of December 4, 1944,
novena services were conducted in St. John's Church.
At these services collections were taken and the money
was later brought to the rectory. On that evening
Father Reilly left the rectory shortly before 10 o'clock
to go to the church hall in an adjoining building where
an entertainment was in progress. Upon his return he
went to the door of the counting room and switched
on the light. As he entered, a man struck him and

ran out the door and down the hallway to the front entrance. The priest pursued him but the man escaped. Father Reilly gave the police a description of the intruder, they later arrested the defendant, and the priest identified him as his assailant.

It is conceded that the jury could have found that the defendant broke and entered the rectory at night. It is manifest that they could have found that the building was used in part as a dwelling for the priests and in part as a place where church business was carried on. As to the latter activity, the rectory was a place where important religious affairs were engaged in, in furtherance of the general purposes of the church, and also a place where financial matters in connection with it were attended to. The counting room contained personal property, particularly the counting machine. When the machine was being used, the room contained money belonging to the church.

The question is one of the proper construction of § 6097 of the General Statutes. The historical approach is of definite value. Our first statute on burglary appears in the Code of 1650, and it penalized burglary "by breaking up any dwelling house." 1 Col. Rec. 513. In May, 1735, the statute was amended to penalize "burglary, by breaking up any dwelling house or shop wherein goods, wares or merchandise are kept." 7 Col. Rec. 561. That continued to be the law until 1821, when without any intervening legislation, so far as we have been able to ascertain, the offenses of common-law burglary and statutory burglary were divided. One section of the title concerning crimes and punishments provided a penalty for "every person who shall commit burglary," and another section penalized any person who in the night season should break and enter the store, shop, warehouse or outhouse of another, whether parcel of any

mansion house or not, wherein goods, wares and merchandise were deposited, with an intention to commit theft within the same. Statutes, 1821, p. 154. Swift makes an interesting commentary upon the latter section when, after virtually quoting the statute, he says: "As this species of theft merits a punishment of a severer kind than ordinary theft, it became necessary to adopt this regulation." 2 Swift's Digest 301.

We have found no intervening act, but in the Compilation of 1835, page 124, to the words "with an intention to commit theft" were added "or any crime punishable by imprisonment in the Connecticut State Prison." That continued to be the law until 1870, with the words "whether parcel of any mansion-house or not" a part of it. General Statutes, Rev. 1866, p. 253. In 1870 an act was passed, without definite reference to the provision in the General Statutes, which provided a penalty for any person who broke or entered "the dwelling-house of another, or the store, banking-house, shop or warehouse of another, or office, or public building wherein goods, wares, or merchandize are deposited, with intent to commit theft, or any crime punishable by imprisonment in the Connecticut state prison." Public Acts, 1870, Chap. 45. In the Revision of 1875, page 502, the provisions of this act were again severed to separate the offense of breaking and entering a dwelling house, which was made punishable by a separate section addressed to every person "who shall commit burglary," from the offense providing a penalty for every person "who shall, in the night season, break and enter the store, shop, warehouse, or outhouse of another, wherein goods, wares or merchandise are deposited, with intent to commit theft, or any crime punishable by imprisonment in the State prison." In 1886 the provisions concerning burglary were in general restated, and

among others a penalty was provided for any person who in the night season, with intent to commit any crime therein, should break or enter any building or vessel in the possession of another used as a place for the custody of property, or any building used as a place of instruction or of public worship. Public Acts, 1886, Chap. 33. That brings us to § 6097 of our present revision, which repeats the language of 1886.

From the time of the inception of this particular provision until the act of 1870, the inclusion of the words in the law "whether parcel of any mansion-house or not" clearly evinced a legislative intent that there might be situations where one who broke and entered a building might be prosecuted for common-law burglary if any person lived in it or under the statute if there was the specific intent to commit the crime of theft or any crime punishable by imprisonment in the state prison. It does not seem reasonable to suppose that when, in 1870, the words "whether parcel of any mansion-house or not" were dropped the legislature intended to narrow the scope of the law so as to exclude all buildings used for the custody of property where persons dwelt within them. From the historical approach the proper construction of the statute is that if a building is in fact used as a place for the custody of property it is within the statute, even though some person or persons may dwell under the same roof.

We do not go so far, however, as to say that all dwelling houses would by such a construction be brought within the scope of the statute. The words "any building . . . used as a place for the custody of property," while broader than the specific provisions of the earlier law applying to "store, banking-house, shop or warehouse of another, or office, or public building wherein goods, wares, or merchandize are de-

posited," are properly construed as referring to situations of the same general nature, and the presence in a building of property merely incidental to its occupancy as a dwelling place would not bring it within the terms of the statute. However, that would not exclude the situation presented in the case before us. Entry into a building may be statutory burglary if, although it is in part occupied for dwelling purposes, it is also occupied for the use, storage or custody of property not appropriate to an ordinary dwelling place but to such places as a storehouse, shop, warehouse, office or the like.

Of course it would be true that situations which would present common-law burglary might also be within the provisions of the statute. However, the overlapping of the definition of offenses is illustrated again and again in our statutes, and one may be accused upon the same set of facts of having committed either of two or more specific offenses. For instance, if one breaks and enters a dwelling house with intent to commit a theft and does commit it, he may be punished either for theft or burglary. It is not so, as implied in the defendant's argument, that upon a given set of facts one must be guilty of a specified crime and no other.

The court did not err in refusing to set aside the verdict.

Error is assigned in a ruling upon evidence. The defendant testified in his own behalf, and upon cross-examination was asked: "Are you the John English that was convicted of burglary in Bridgeport on February 11, 1939?" Objection was made and overruled, and the witness answered, "Yes." The record shows that the evidence was offered for the specific purpose of affecting the credibility of the witness, and that the evidence was admitted solely for that purpose. Gen-

eral Statutes, § 5582, in its application to the present circumstances, provides as follows: "No person shall be disqualified as a witness in any action by reason of his interest in the event of the same as a party or otherwise . . . or of his conviction of crime; but such interest or conviction may be shown for the purpose of affecting his credit." The conviction must be of an infamous crime. *Card* v. *Foot,* 57 Conn. 427, 433, 18 Atl. 713. A proper record of conviction for burglary would be admissible as affecting the credibility of the witness, since both common-law and statutory burglary are infamous crimes. See *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 509, 111 Atl. 861. The defendant concedes this but claims that a conviction cannot be shown by asking an accused upon his cross-examination whether he was convicted of burglary at a specific time and place.

The purpose of the statute, § 5582, was to remove the common-law disqualification of a witness because of a conviction of crime, with a provision, however, that such conviction might be shown to affect his credit. It has nothing to do with the method by which such conviction shall be shown. *State* v. *Palko,* 121 Conn. 669, 678, 186 Atl. 657. In that case, upon the cross-examination of the defendant, the court excluded questions as to his possession of the revolver with which he shot the police officer. These were claimed to show that the defendant had obtained it by burglarizing a tavern, to affect his credibility. We said (p. 677) that the defendant by taking the stand in his own behalf waived the privilege accorded him under the law as a person accused of crime and became as any other witness and subject to the same tests of cross-examination; he therefore had rendered himself subject to cross-examination upon such acts of misconduct as indicated a lack of veracity, and the fact

that such cross-examination might establish that the defendant had been found guilty of another crime was not reason for its exclusion. We also said that the record indicated that the court excluded the question on the ground that under the statute, § 5582, the conviction could be shown only by offering the record, and that this was error. In *State* v. *Chapman,* 103 Conn. 453, 484, 130 Atl. 899, we said that the fact that the cross-examination of the defendant tended to show the commission of other crimes did not render it objectionable; that he was a witness and his credibility was subject to attack as in the case of any other witness. It is true that in the cases cited the defendant was not asked directly whether he had been convicted of an infamous crime; however, the purpose of the questions was substantially that, and the language we used covered such a situation.

The defendant cites a number of our decisions which he claims establish the rule that the credit of a witness can be attacked only by placing in evidence a record of the conviction. In *Hall* v. *Brown,* 30 Conn. 551, 557, while there is language supporting that contention, the court was concerned with the question whether, in a civil action for theft, evidence could be offered to prove the defendant guilty of the crime of theft, and it was not considering the method by which a conviction of crime could be proven. In *Card* v. *Foot,* supra, the question involved was the method of proving a conviction when it was sought to establish it by independent evidence, not by cross-examination of the witness whose credibility it was sought to attack in that way. The statements in *Dore* v. *Babcock,* 74 Conn. 425, 430, 50 Atl. 1016, and in *Shailer* v. *Bullock,* 78 Conn. 65, 69, 61 Atl. 65, where it is said that the only method of attacking the credit of a witness by proof of the conviction of a crime is by record evi-

dence of his conviction, refer to situations like those in *Card* v. *Foot,* supra, as is shown by the authorities cited. Only as obiter dictum in *Spiro* v. *Nitkin,* 72 Conn. 202, 205, 44 Atl. 13, and in *Joseloff Co.* v. *Spirt,* 97 Conn. 447, 452, 117 Atl. 523, have we distinctly stated that convictions of crime may not be shown by cross-examination of the witness whose credibility is under attack, and these statements were impliedly overruled by our later decision in *State* v. *Palko,* supra.

Sound reason supports our holding, especially as it applies to instances where the witness is the defendant in a criminal action and he takes the stand in his own behalf. It is well stated by Chief Justice Cooley in *Clemens* v. *Conrad,* 19 Mich. 170: ". . . the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight, that it may almost be looked upon as purely imaginary. . . ." See also 4 Wigmore, Evidence (3d Ed.), § 1270, and cases cited, including *State* v. *Palko,* supra; 8 id., § 2276 (2); 1 Greenleaf, Evidence (16th Ed.), p. 579.

The court did not err in admitting the testimony objected to by the defendant.

There is no error.

In this opinion the other judges concurred.