PEOPLE *v.* OWEN.

1. CRIMINAL LAW—EVIDENCE—CONFESSIONS—PROPRIETY OF TAK-
ING UNDER OATH.
  The practice of taking confessions before a notary and under
  oath is not to be commended.

2. HOMICIDE—MURDEROUS ASSAULT — EVIDENCE — CONFESSIONS —
ADMISSION—NONPREJUDICIAL ERROR.
  Where, in a prosecution for assault with intent to murder ac-
  cused's wife, the circumstances surrounding the assault are
  not in dispute and leave no doubt of accused's intent, the er-
  roneous admission of a confession, in which the only harmful
  statement is that he intended to kill his wife and then him-
  self, is not prejudicial, since it supports the only theory upon
  which a defense was, or could be, made, i. e., insanity. MOORE
  and McALVAY, JJ., dissenting.

3. CRIMINAL LAW—EVIDENCE—ADMISSION—HARMLESS ERROR.
  A conviction should not be reversed for the erroneous admis-
  sion of testimony without which it is perfectly evident that
  a verdict of guilty should have been rendered.

4. SAME—EVIDENCE—CONFESSIONS—ADMISSIBILITY.
  A confession was not rendered inadmissible by the fact that it
  was made to and in the presence of police officers, there hav-
  ing been no threats, promises, or circumstances amounting
  to duress attending its making.

5. SAME — CONFESSIONS — UNDER OATH — SELF INCRIMINATION —
CONSTITUTIONAL LAW.
  The fact that a confession, made immediately after accused's
  arrest and before any complaint had been made against him,
  was made under oath, did not change it from a confession
  into a deposition in a judicial proceeding, prohibited by sec-
  tion 32 of article 6 of the Constitution, and thereby render it
  inadmissible. MOORE and McALVAY, JJ., dissenting.

6. HOMICIDE—MURDEROUS ASSAULT—INSTRUCTIONS — MANSLAUGH-
TER—PROPRIETY.
  Where, in a prosecution for assault with intent to kill and mur-
  der accused's wife, it was undisputed that accused lay in wait
  for his victim, seized her without warning, and with a deadly
  weapon nearly ended her life, and the only defense attempted

was insanity, there was no occasion for an instruction on manslaughter, and the refusal of such an instruction was not error.

7. SAME—EVIDENCE—PREVIOUS ATTEMPTS AND THREATS.
   That accused previously went to the house of his wife's parents with the expectation of finding her there and attacked them with a deadly weapon, and his previous threats against his wife and child, were competent.

Error to the recorder's court of Detroit; Connolly, J. Submitted June 12, 1908. (Docket No. 116.) Decided November 30, 1908.

Charles Owen was convicted of an assault with intent to commit the crime of murder, and sentenced to imprisonment for life in the State prison at Marquette. Affirmed.

*Louis H. Wolfe* (*Fred H. Aldrich*, of counsel), for appellant.

*George B. Yerkes*, Prosecuting Attorney, and *Frank D. Eaman*, Assistant Prosecuting Attorney, for the people.

The respondent was convicted of the crime of assault with intent to kill and murder his wife. The facts are undisputed and are admitted. His wife had left him, and had filed a bill for a divorce. He had previously assaulted her, and had made threats to kill her. She was living with her mother. She and her mother were returning from the office of her solicitor, and were on their way to the police court to obtain a warrant for the respondent's arrest. He lay in wait for her behind a pile of bricks. As she passed, he jumped from his hiding place, seized her, and with a razor cut her throat from ear to ear nearly severing the windpipe. A deputy sheriff and others were passing at the time. They immediately seized him before he accomplished his purpose to kill his wife, and the deputy sheriff at once took him to police headquarters, a short distance away, and he was there immediately ques-

tioned by the chief detective, and made a statement under oath, which was introduced in evidence upon the trial. A notary public was called in who administered the oath, took down his testimony, and respondent signed it. He made no objection, when asked, to making a statement or to being sworn. On the night previous he had gone to his mother-in-law's, where his wife and little child were then living, and made an assault upon his father and mother-in-law. He was then armed with a revolver, which they succeeded in wresting from him. He then threatened to kill the whole family. Mrs. Owen came in shortly after the struggle was over, and found her mother with her clothes badly torn and covered with blood.

GRANT, C. J. (*after stating the facts*). 1. Was this written and sworn confession admissible in evidence? is the principal question in the case. No threats were made; no inducements held out. There was no duress, unless the mere fact that he was under arrest and in the presence of some police officers constitutes duress. There were no facts for him to conceal. The ceremony of taking his statement was a useless one, and the practice is not to be commended. His answers were intelligent, and bear no evidence of having been made under duress or any misapprehension of his rights or reluctance to answer. The only language in the statement which can possibly be construed as prejudicial is that he said he intended to kill his wife and then himself. All the circumstances surrounding the assault, the instrument used, the wound inflicted, and the manner of inflicting it, leave no possible doubt of his intent in this regard. The sole ground upon which he could be acquitted of the crime charged, or of murder, if death had resulted, was insanity, the defense interposed by counsel. Certainly the statement that he intended to kill himself after killing his wife could not have prejudiced the jury. On the contrary, the intent to take one's own life is evidence of insanity as was admitted by counsel for the prisoner upon the argument. Under these

circumstances, if it were error to admit this statement, it is, in my judgment, clearly an error without prejudice. In this regard I concur in the holding of the supreme court of Illinois in *Hoge* v. *People,* 117 Ill. 36:

" Where the court can see from the record that the evidence is so overwhelmingly against a defendant tried for a criminal offense, that had the jury been instructed correctly, they must still have found against him, it would not reverse a judgment of conviction for a mere error of instruction."

For the same reason a conviction should not be reversed for admitting testimony without which it is perfectly evident that a verdict of guilty should have been rendered.

Was the confession admissible ? It was not rendered inadmissible by the fact that it was made to and in the presence of police officers. Only when confessions are obtained by threats or promises, or under circumstances which legally constitute duress are they inadmissible. Otherwise they are admissible for the consideration of the jury under proper instructions by the court. This rule is sustained by an unbroken line of authorities. We, therefore, refrain from discussing it, and refer only to some authorities. This court has so uniformly held. *People* v. *Simpson,* 48 Mich. 474; *People* v. *Barker,* 60 Mich. 299; *People* v. *Gastro,* 75 Mich. 127; *People* v. *McCullough,* 81 Mich. 25; *People* v. *Flynn,* 96 Mich. 276; *People* v. *Warner,* 104 Mich. 337.

" In this country the orthodox English and Irish doctrine, declining to consider the mere fact of arrest as sufficient to exclude a confession, has been universally accepted." 1 Wigmore on Evidence, § 851.

" The modern rule that the mere fact of accused person's being under arrest at the time of making the confession does not exclude it seems generally conceded." 1 Greenleaf on Evidence (16th Ed.), p. 360.

"A confession voluntarily made, without the influence of hope or fear, is admissible in evidence, although it was made by a party under arrest, and to the person having him in custody at the time." 6 Am. St. Rep. 243, note, and authorities there cited.

There is not even a scintilla of evidence in this case to justify the conclusion, either by a court or jury, that this confession was involuntarily made, or that respondent was unwilling to make it, or that any inducement whatever was held out by the officers for him to make it. If it became inadmissible, it became so by the bare fact that it was made under oath.

The fact that the confession was made under oath does not change it from a confession into a deposition in a judicial proceeding, prohibited by section 32 of article 6 of the Constitution. Respondent was no more a witness against himself by making a confession under oath without objection, than he would have been by making a confession without an oath. Respondent was not compelled to be a witness in "any criminal case against himself." No case was pending. No complaint had been made. He had not been charged with any crime. True he had been caught "red-handed" in attempting to take the life of a human being, and was promptly arrested. Within a few moments thereafter he made the confession of an act, the commission of which was not in dispute. The administering of the oath was a circumstance which the jury might consider in connection with the other circumstances in determining what effect they would give to the confession. To me it is entirely plain that the constitutional provision does not include statements or confessions by one suspected of, or charged with, the crime, when the confession is not made in the course of a judicial procedure. Had a complaint been made, and the respondent brought before an examining magistrate, and had he then been asked under oath the questions the respondent in this case was asked, it might well be held to be within the constitutional prohibition. The authorities recognize this distinction. That a confession under oath is admissible is held by the following authorities: *Com.* v. *Wesley*, 166 Mass. 248; *Schoeffler* v. *State*, 3 Wis. 823; *Com.* v. *Clark*, 130 Pa. 641; *State* v. *Legg*, 59 W. Va. 315 (3 L. R. A. [N. S.] 1152); *United States* v. *Brown*, 40 Fed. 457.

I quote with approval the language of *Com.* v. *Clark*, 130 Pa., at pages 650, 651:

"The remaining specification refers to the admission of the defendant's confession or statement. We do not think the objections that it was obtained by duress, and was sworn to, are of much importance. The testimony upon this point is given in the commonwealth's paper book, and it shows very conclusively that the statement—it was not a confession—was made of his own free will, and without either threats, or the promise of reward or benefit in the future. The law is always tender and merciful to a defendant. It will protect him against the use of a confession drawn from him by holding out inducements to make it; but when a criminal wants to ease his mind by a voluntary confession, it would be a weak sentimentalism to interfere with his doing so. Nor do I see that its force as a statement is impaired by the fact that the justice of the peace administered an oath to him. It was a foolish, blundering act on the part of the justice, but it was voluntarily taken by the defendant. The facts bear no analogy to *Com.* v. *Harman*, 4 Pa. 269. In that case a prisoner was brought before the justice, charged with homicide. The justice administered an oath to the prisoner, and then told him: 'If you do not tell the truth, I will commit you.' Under such circumstances we are not surprised that Chief Justice Gibson condemned the conduct of the justice in this strong language:

" 'The administering of an oath by a magistrate, under such circumstances, was a gross outrage upon the accused. Any information drawn by it, or subsequently given on its basis, is inadmissible.'

"The fact must not be overlooked that a defendant in a homicide case may now take the stand, and be sworn as a witness in his own behalf. There would seem to be no good reason why he may not of his own motion go before a magistrate, and make a voluntary statement under oath. It is quite a different matter where the oath is administered against his will. We see nothing, then, in the circumstances under which this statement was made to exclude it."

In *Schoeffler* v. *State*, it is said:

"The general rule is that what a party says in relation to the offense is admissible in evidence against him, whether on oath or not."

In *People* v. *McMahon*, 15 N. Y. 384, one of the cases relied upon by respondent's counsel, the respondent was arrested on suspicion of being the murderer of his wife, was brought before the coroner, sworn and examined as a witness. The evidence was held inadmissible, not because "any right or privilege had been violated, but because it is deemed unsafe to rely upon it as evidence of guilt." It may be that the language that I have quoted from *Com.* v. *Clark* was not essential to the decision of the case, but it was intended as an authoritative declaration of the law, and as such entitled to much consideration.

Counsel for the prisoner rely upon the case of *People* v. *McMahon*, supra, decided in 1857. That court had maintained the opposite doctrine in *Hendrickson* v. *People*, 10 N. Y. 13, decided in 1854, wherein it was held that statements made by the prisoner as a witness at the coroner's inquest were admissible in evidence against him, Judge Selden dissenting. The personnel of the court had largely changed before the decision of *People* v. *McMahon*. The question again came up before that court in 1869, in *Teachout* v. *People*, 41 N. Y. 7. It was there held that the statements by a prisoner, under oath, at a coroner's inquest, are admissible against him, although he knew that he himself would probably be arrested for the crime, and the ruling in the *Hendrickson Case* affirmed, two of the judges dissenting. Again in 1883 the question came before that court in *People* v. *McGloin*, 91 N. Y. 241. The facts in that case are quite similar to those here. The prisoner had been arrested by an inspector of police, and charged with the crime. He thereupon said he would make a statement. A coroner was sent for, who came to police headquarters where the prisoner was in custody, and a confession made. The coroner in that case, as in this, was not acting in any official capacity, but simply as a clerk to take down the confession. Some question was made whether it was under

oath, but the court held that it made no difference. It was held that the examination was not judicial within the law of that State. The prior cases were cited and discussed, the court saying:

"Without discussing or referring to the authorities on this subject at length, it may be said that the following propositions were, prior to the adoption of the criminal code, well settled by law in this State:

"*First.* That all confessions material to the issue, voluntarily made by a party, whether oral or written, and however authenticated, were admissible as evidence against him on a trial for a criminal offense. *People* v. *Wentz*, 37 N. Y. 303.

"*Second.* It was no objection to the admissibility of such confessions that they had been taken under oath from a person attending before a coroner, in obedience to a subpœna, upon an inquiry conducted pursuant to law, into the causes of a homicide. *Hendrickson* v. *People*, supra; *Teachout* v. *People*, supra.

"*Third.* That the confession or declaration sought to be given in evidence was in writing, and purported to be sworn to, was no objection to its admissibility, unless it also appeared that it was taken before a magistrate upon a judicial investigation against the person accused of the commission of the crime."

It seems apparent from these last two cases that the *McMahon Case* is overruled, or at least its doctrine is repudiated, by the court of appeals of that State. Wigmore so understands it, for he says:

"The rulings in New York are of first importance, because the comparatively early promulgation there of the Selden theory in the *Hendrickson* and *McMahon Cases,* and its repudiation in the *Teachout Case,* greatly influenced the discussion in the other jurisdictions, in most of which the controversy is comparatively recent." 1 Wigmore on Evidence, § 852.

An exhaustive history of this subject is found in Wigmore on Evidence (section 849 et seq.). Mr. Wigmore states:

"Down to 1816, we find no exclusion (of sworn confessions). Between that time and 1840 occurs a long and

tangled series of rulings, representing conflicting views, and furnishing a fruitful source of later misunderstanding."

He there also states:

"It was thus not the oath, but the specific statutory illegality of its application, that prevented the admission, for there was no method of enforcing the prohibition except by rejecting the statement so obtained."

The question is before this court for the first time. The authorities are not harmonious. The facts of one case differing in important respects from others may partly account for the conflict. I think the sound rule to be that confessions made under oath should not be rejected when they are not made in the course of judicial proceedings, and when the respondent is in no sense a witness, and such confessions are not prohibited by statute. The case of *People* v. *Thomas*, 9 Mich. 314, has no application here. That case was tried before the statute was enacted permitting respondents to be sworn in their own behalf. Defendant desired to be sworn as a witness. The court refused, holding that he was only entitled to make a statement. Under the statute, if one charged with crime chooses to become a witness in his own behalf, he is subject to the same rules of evidence as govern any other witness.

2. The court instructed the jury very fully and correctly as to the four verdicts which they could render (1) guilty of assault with intent to murder; (2) guilty of assault with intent to do great bodily harm less than murder; (3) assault and battery; and (4) not guilty. It is now urged that the court should have defined to the jury the crime of manslaughter, claiming that, if death had resulted, there was evidence from which the jury might have found the respondent guilty of manslaughter. There is nothing shown upon the record to justify such conclusion. The respondent lay in wait for his victim. He seized her without warning, and with a deadly weapon nearly ended her life. A verdict of manslaughter under such circumstances would have been without excuse. If

the respondent was insane, he was entitled to an acquittal, but the jury found that he was sane. The court, in a very full and fair charge, submitted the case to the jury, and we find no error in the instructions given.

3. It is urged that there was error committed in permitting evidence that the defendant went to the house of his father- and mother-in-law, where his wife was staying, and assaulted them with a deadly weapon, and also of previous threats made against his wife and child. That he went there in the expectation of finding his wife, is clear. His conduct and threats on that occasion were competent. The witness testified that the defendant wanted to kill the whole family. His declarations before the crime, indicating enmity towards his wife and child and her parents, and that he was contemplating an assault upon some one of the family, are admissible. Underhill on Criminal Evidence, p. 394; *Parker* v. *State*, 136 Ind. 284; *State* v. *Pierce*, 90 Iowa, 511; *People* v. *Haxer*, 144 Mich. 575.

Counsel allege other errors in the rulings of the court in admitting and rejecting testimony. They are not of sufficient importance to discuss, and it is sufficient to say that we find no error upon the record, and the conviction should be affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred with GRANT, C. J.

MOORE, J. (*dissenting*). The respondent was convicted of the crime of assault with intent to kill and murder his wife. The defense is the insanity of the respondent. It is claimed that, because of his insane condition, he had no intent to commit any crime. There are a number of assignments of error. We think it necessary to discuss at length but one of them. The respondent sprang upon his wife as she was coming from her solicitor's office, on the way to the police court to obtain a warrant for respondent, grabbed her by the throat, and slashed her throat with a razor. He was arrested at

once, with the razor still in his hand, by Deputy Sheriff Bellyea, who was passing, and was taken at once to police headquarters a short distance away. Instead of taking respondent to a magistrate and holding an examination according to the forms of law, a shorthand reporter, who is called the "official stenographer of the police department," and who is also a notary public, was sent for. The respondent had *not indicated any desire to give his version of the occurrences of the morning,* but an examination, unknown to the law, was at once entered upon at police headquarters, before the police commissioner, two police officers, the chief of detectives, the above-mentioned stenographer, the deputy sheriff, and no one else. The respondent was not cautioned that any statement he might make could be used against him. He had no friend or counsel present. He was sworn, and the chief of detectives examined him at length, putting to him direct and leading questions. All this occurred on the same morning and shortly after the assault was made. This examination was received in evidence over the objection of the attorneys for the respondent. The substance of it was that respondent had attacked his wife with a razor and intended to kill her, and that he then intended to kill himself, and that he still intended to kill himself. It contained the following:

"*Q.* Nobody made you any promises or any threats to make this statement? This is true; and you intended to kill the woman this morning and then kill yourself? Is that right?

"*A.* That is right.

"*Q.* I guess that is all the statement that is necessary. That is all. Take him downstairs, and register him, Charley. (Witness leaves room)."

It is now argued upon the part of the people that the statement was voluntary and admissible under *People* v. *Gastro,* 75 Mich. 127, *People* v. *Flynn,* 96 Mich. 276, and *People* v. *Warner,* 104 Mich. 337. In the first of these cases it appeared the statement was made without

question or suggestion, and was entirely respondent's own offer. An examination of the other two cases will show them easily distinguishable from the one at bar. To say that the part taken in this proceeding by the respondent was voluntary is to make a misuse of words. It is perfectly apparent that its purpose was to obtain from the respondent some statement that could later be used against him. When the chief of detectives thought that purpose was accomplished, the inquisition, for so it should be characterized, was brought to an end. In the case of *People* v. *Thomas*, 9 Mich. 314, there is an interesting discussion by Justice CAMPBELL of the difference in the procedure in criminal cases in the American and English courts, upon the one hand, and the Scottish and French courts, upon the other, and he also alludes to the fact that the Constitution of this State does not permit any respondent to be compelled to be a witness against himself. The proceeding under review is more in keeping with the Scottish and French systems which have never prevailed in the American and English courts. The sweat-box procedure, so called, is un-American, unauthorized, and unlawful, and cannot be too severely condemned. See, as bearing somewhat upon the question involved, *Flagg* v. *People*, 40 Mich. 706; *People* v. *Wolcott*, 51 Mich. 612; *People* v. *McArron*, 121 Mich. 1. Section 32 of article 6 of the State Constitution reads:

"No person shall be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

Section 10211, 3 Comp. Laws, reads in part as follows:

"*Provided, however*, That a defendant in any criminal case or proceedings shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

The procedure by means of which the statement was obtained was in violation of the constitutional provision

above quoted, and the reception of the statement in evidence was in violation of both the constitutional and the statutory provisions quoted.

It is urged, however, that though the statement was obtained by unlawful means, and its reception as evidence was error, it is harmless error, because the other evidence shows the guilt of the accused. There was no dispute about the assault, the seriousness of the wound, and the instrument with which it was inflicted. But it was, and is, insisted by way of defense, that respondent was so insane that he was not actuated by an unlawful intent, so that the question of intent became the very gist of the inquiry. It is stated by the prosecuting attorney in his brief, and rightly stated, that a necessary element to be proven by the people under the charge is the intent which actuated the respondent when he made the assault. How can it then be said that the reception of a written admission under oath, unlawfully obtained, that respondent intended to kill his wife when he made the assault was harmless error? We think a simple statement of the proposition is its own answer.

The assignments of error upon the admission of testimony of previous threats are not well taken. This testimony bore upon the question of intent. The errors assigned in relation to the cross-examination of witnesses will not be discussed, as some of them were within the discretion of the court, and the others are not likely to arise on a new trial.

For the reason stated the case should be reversed, and a new trial ordered.

McALVAY, J., concurred with MOORE, J.