E. McDonald, *Plaintiff in Error,* v. The State of Florida, *Defendant in Error.*

Opinion filed Nov. 9, 1915.

1. A confession voluntarily made by the defendant while under arrest to the officer having him in custody, is not rendered inadmissible merely because made to the officer who arrested him or has him in custody. Such a confession is extra-judicial and distinguished from the statements made by an accused person on oath before a coroner, Grand Jury or Committing Magistrate investigating the case.

2. Upon the trial of a person for intending to procure miscarriage of a woman, although it appears that the name of the woman upon whom the abortion was intended to be performed, as alleged in the information, was a fictitious one, but that she was known by such name to those with whom she had dealings and to whom she had gone for relief and treatment, there is no variance.

3. The authority of the trial court without notice to plaintiff in error upon a *nunc pro tunc* order to correct the minutes of the court to show the presence of the accused during the trial, after writ of error has issued, is questioned.

Writ of Error to Criminal Court of Record, Hillsborough County; Lee J. Gibson, Judge.

Judgment affirmed.

*Macfarlane & Chancey,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J.—The plaintiff in error was convicted in the Criminal Court of Record for Hillsborough County upon an information charging her with the intent to procure a miscarriage of one Mary Martin by using certain instruments and means unknown to the county solicitor.

The plaintiff in error, Mrs. McDonald, occupied a house in Tampa. One night in July, 1914, Doctor L. J. Efird in company with a police officer named Hill went to the house occupied by Mrs. McDonald. Dr. Efird went in the house alone and asked Mrs. McDonald if there was a young woman patient in the house calling her by name and informing Mrs. McDonald that the girl was pregnant and was under his care and that he wanted to find out where she was. Mrs. McDonald then told him there was no such person in the house. Thereupon the doctor left the house and reported the result of his visit to the chief of police, Mr. Woodward, who with the county solicitor, Dr. Stringer, and Captain Rhodes, had followed Dr. Efird to the house. The entire party, with the exception of the officer who accompanied Dr. Efird, returned to the house and after some objections by Mrs. McDonald went in, and went upstairs, where they found the young woman called Mary Martin, about whom Dr. Efird had inquired of Mrs. McDonald. She was lying in bed in one of the rooms upstairs. Mrs. McDonald went into the room with these men, sat down on the bed and said to the girl, "Don't say a word; don't open your mouth; be careful what you say." Mrs. McDonald was then induced to leave the room, after being informed that the men who were with the doctors were the county solicitor, chief of police and Lieutenant Rhodes; she went into another room across the hall, followed by the chief

of police and county solicitor, who went into the room with her. The two doctors, Efird and Stringer, were left in the room with Mary Martin and made an examination of her with her consent. They found that the "uterus of the womb had been dilated, a rubber catheter pushed up in the womb and up against this catheter was a lot of cotton that had evidently been soaked" so that it could be packed tightly in the vagina. The girl was pregnant and the substances found in the womb and vagina were sufficient to produce an abortion, so Dr. Efird testified both on direct and cross-examination. A miscarriage did in fact follow. A bag of obstetrical instruments was found in the room occupied by the girl. Some of those instruments were designed for the purpose of dilating the mouth of a womb. The mouth of the girl's womb had been dilated in order to insert the catheter. Mrs. McDonald had lived in Tampa for five years, and had practiced midwifery since 1903. The instruments belonged to her. After the examination of the girl was completed Mrs. McDonald made certain statements in the presence of the physicians, the solicitor, chief of police and the police officer. In these statements, which were made voluntarily by her without pressure or threats or promise of lenience, she admitted to the chief of police that the girl had come to her in trouble and wanted Mrs. McDonald "to do something for her;" that she charged the girl seventy-five dollars, twenty-five dollars of which was paid, and some jewelry turned over to her; she admitted using the instruments and asked the physicians if "it wasn't done properly." To Dr. Efird, Mrs. McDonald admitted that she placed the catheter and the cotton in the girl's womb and vagina, and pleaded with the solicitor

not to have her prosecuted for it. She also agreed that the catheter and cotton should be removed and requested that it be done. To Dr. Stringer she admitted doing the act and said that she had been taught to do things properly, when asked by the doctor if she had observed surgical cleanliness; that she was to receive seventy-five dollars for producing the abortion, twenty-five of which had been paid, and some jewelry taken as collateral. Up to this time the woman had not been arrested. She seemed to have been excited and somewhat alarmed and talked freely about the matter.

The officer Hill remained at the house when the others had gone, for the purpose of taking Mrs. McDonald to town with him, when her other daughter, who was away and was expected soon to arrive, should come. According to the officer the woman was then under arrest. While sitting on the porch waiting for the daughter to come, the woman worrying about her trouble, said that times were hard, she needed money, thought she would help the girl out of her trouble, all of which constituted her reason for committing the act. She admitted that she had received twenty-five dollars for the work.

The defendant by her counsel objected to the reception in evidence of the statements and admissions made by her to these witnesses, upon the grounds and that they were immaterial and irrelevant, that no sufficient predicate had been laid to justify the admission in evidence of the statements, and because at the time the statements were made the woman was "surrounded by officers and by the county solicitor, and that she was not warned that any statements she might make would be used against her, that she was excited and crying and was not warned

of her rights in the premises." These objections were overruled, and form the basis of the first, third, fourth, fifth, sixth and seventh assignments of error, all of which are argued together.

The language used by this court in some opinions dealing with the admissibility in evidence of confessions made by an accused person under arrest seems to indicate that the view has obtained here that a confession of guilt freely and voluntarily made by an accused person to an officer who has merely arrested such person, is not admissible in evidence at the trial of such person, unless it is clearly shown that the accused person was fully advised by the officer or some person in authority of such accused person's rights under the law. We think, however, that a careful review of the many decisions by this court upon the subject of admissibility of confessions will show that no such view has been expressed.

The distinction has been drawn between judicial and extra-judicial confessions, and this court has invariably held that in cases where the confession offered in evidence could be classed as a judicial confession, it was necessary to its admissibility that it be preceded by a warning or caution that the accused need not incriminate himself, and that his words might be used against him at the trial. In a recent and most excellent work entitled "Ruling Case Law," the subject is exhaustively discussed. 1 R. C. L. 569.

In the case of McNish v. State, 47 Fla. 69, 36 South. Rep. 176, the court, speaking through Justice SHACKLEFORD, said: "After a careful examination of the bill of exceptions we fail to discover wherein the court committed error in admitting this confession. It seems to

us that the court exercised great caution in regard to the admission of said confession and followed the rule laid down by us in the former opinion rendered in this case." "Counsel for defendants strenuously contends that the confession should not have been admitted in evidence for the reason that at the time it was made, òr alleged to have been made, the defendant McNish, had a chain locked around his neck, with the other end of said chain fastened to a pole, and the officer to whom the confession was made was alone with said defendant at the time and had a pistol in his pocket, and that these facts of themselves were sufficient to render said confession inadmissible.   The authorities do not support this contention." The McNish case referred to, reported in 45 Fla. 83, 34 South. Rep. 219, dealt with the admission in evidence of a judicial confession, in which the committing magistrate before whom the proceedings were held which were offered in evidence, had not only failed to caution the accused that his statements may be used against him, and inform him of his rights, but it also appeared that a confession previously made to a constable in charge of the prisoner had been illegally obtained.   The court said on this point that where a confession has once been obtained through illegal influence, it must be clearly shown that such influence has been removed before a subsequent confession may be received.

In the Daniels case, 57 Fla. 1, 48 South. Rep. 747, the confessions introduced in evidence consisted of statements "given and signed by Silas Daniels and Luther Russ at the coroner's inquest while in custody of the sheriff."   This was not an extra-judicial confession, but a judicial one, and the court held that the prisoners

should have been fully advised of their rights, and that after being so advised it should appear that the statements were voluntarily made. In the Jenkins case, 35 Fla. 737, 18 South. Rep. 182, referred to in the Daniels case, the court held that the testimony of the accused before the grand jury, where he was neither charged with the offense, nor in custody, was admissible where it appeared that he was advised that he need not incriminate himself, nor testify unless he was willing to do so. But here was a judicial investigation where the witness before the grand jury was suspected, though not charged with the crime. The court referred favorably to cases holding that testimony given in a judicial investigation, although under oath, may be admitted if at the time it was given the prisoner was not resting under any charge or suspicion of having committed the crime. The Green case, 40 Fla. 474, 24 South. Rep. 537, also referred to, was one in which was involved the admissibility of a judicial confession. The Daniels case is authority for the principle that the statements before a magistrate of an accused person under arrest charged with crime are in general not admissible unless it appears that the prisoner was advised of his rights. The references made by the court in the Howell case, 66 Fla. 210, 63 South. Rep. 421, were only to those cases in which the admissibility of judicial confessions was considered. But the Howell case does not purport to discuss the question. It is stated that the point was not properly presented before the court.

The case of Holland v. State, 39 Fla. 178, 22 South. Rep. 298, was one in which the prisoner shortly after his arrest, made a confession to another person. It was

shown that the confession was freely and voluntarily made and no improper influences were exerted to induce it. The court held the confession to be admissible. The cases cited in that opinion go only to the question of whether the confession was freely and voluntarily made. In the Murray case, 25 Fla. 528, 6 South. Rep. 498, the statements made by the accused were made to the deputy sheriff, afterwards to the sheriff and county solicitor. The first confession was excluded because the trial court had not inquired whether the confession was voluntary or whether it was induced by undue influences held out to the accused. The second confessions were excluded on the theory that where improper means are resorted to, to induce a confession, all subsequent confessions are presumed to have been made under the influences which induced the first. In the Dixon case, 13 Fla. 636, the court used the following language: "The presumption is, that when an *accused* person makes statements in respect to the crime of which he is aware he is suspected, he will not make evidence against himself unless he intends to speak the truth."

In the case of Sims v. State, 59 Fla. 38, 52 South. Rep. 198, the language of the court is: "A confession made while under arrest or in custody, is admissible if it is voluntarily made, and not influenced by any inducements."

We think that the weight of authority sustains the view that a confession voluntarily made, and not influenced by any inducement is not rendered inadmissible because made to an officer by the accused while under arrest and in custody. See 1 R. C. L. p. 565; Hammons v. State, 73 Ark. 495, 84 S. W. Rep. 718; People v.

Owen, 154 Mich. 571, 118 N. W. Rep. 590; 1 Wigmore on Ev. § 851 and authorities cited; 8 Greenleaf on Ev. 360. See 18 L. R. A. (N. S.), note 843.

In the case of Green v. State, 40 Fla. 191, 23 South. Rep. 851, the statements were made by the prisoner while in prison, and to a deputy sheriff. The court said the law does not exclude confessions made to an officer, even though the party making them be at the time in prison. Williams v. State, 48 Fla. 65, 37 South. Rep. 521.

There is not a scintilla of evidence that the defendant in this case was influenced in the slightest degree by the officers, or any one present to make the statement, or that they were involuntarily made, or that she was induced to believe from anything done or said that she would benefit her condition by admitting the facts constituting the offense. We think that the confessions were properly admitted.

The name of the person upon whom the alleged attempt to produce a miscarriage was made was given in the information as Mary Martin. This was shown to be an assumed name, her real name was never disclosed; however, it was shown that she was known by those with whom she came in contact in Tampa as Mary Martin, and by no other name; that she called herself by that name. The defendant requested a charge to the effect that before the jury could convict the defendant it was necessary for the state to prove beyond a reasonable doubt that the name of the woman on whom the abortion was alleged to have been committed was Mary Martin. The request was refused, and the court instructed the jury that if the woman upon whom the abortion was alleged

to have been committed was known by the name of Mary Martin, it was sufficient to support the allegation as to her name. We think this charge was correct, and that no error was committed in refusing the requested instruction. See Reddick v. State, 25 Fla. 112, 5 South. Rep. 704; 3 Bishop's Crim. Proc. § 636.

It is contended that the record does not show that the defendant was present in the court throughout the trial; this constitutes the eleventh and last assignment argued.

While the minutes of the court are not models of form, and the transcript here offers some confusion, yet we think there is sufficient upon which to deduce legitimately the personal presence of the accused at all the necessary stages of the trial. We do this upon the original transcript and not from the supplemental addition thereto filed here showing a *nunc pro tunc* order correcting the minutes entered without notice to the plaintiff in error when the cause was before this court under a supersedeas.

The judgment is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.