## JAMES ASHER v. THE TERRITORY OF OKLAHOMA.

(Filed July 30, 1898.)

1. CRIMINAL LAW—*Indictment for Rape.* In an indictment charging one with having committed the crime of rape upon a girl under 14 years of age, it is not necessary, under the Statutes of Oklahoma, to allege that the crime was committed feloniously, or with a felonious intent.

2. EVIDENCE—*Defendant Witness—Error.* It is not error for a trial court to compel a defendant, while testifying in his own behalf, to answer as to whether he had been confined in jail at a certain place, in

answer to a question asked by the county attorney, calling for such answer, for the reason that such question goes to the credibility and standing of the witness; and when a defendant takes the witness stand in his own behalf he thereby subjects himself to the same rules applicable to other witnesses.

3. NEW TRIAL—*Motion for Overruled Not Error.* The overruling of a motion for new trial, based upon newly-discovered evidence, is not error where the evidence introduced on the hearing of such motion showed that the newly-discovered evidence was not such as would probably change or modify the judgment and sentence of the court; nor will the fact that the prosecuting witness, a girl under 14 years of age, made an affidavit, in which she stated that the testimony given by her on the trial was false, be considered ground for a new trial, when the execution of such affidavit was induced by threats and overpersuasion, especially when she testified on the hearing of such motion for new trial that the testimony given by her on the original trial was true, and that the affidavit was false.

4. SENTENCE—*Not Excessive.* A sentence to serve fifteen years in the penitentiary is not excessive punishment when imposed upon one convicted of the crime of rape in the first degree.
  (Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Lawrence, Huston & Huston* and *C. W. Kerns,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* and *J. C. Strang,* for defendant in error.

James Asher was convicted of a crime, and brings error.   Affirmed.

Opinion of the court by

BURWELL, J.: The defendant was indicted, tried, convicted, and sentenced to serve a term of fifteen years in the territorial penitentiary for the crime of rape. He now prays a reversal of the judgment and sentence of the trial court, and insists that he is entitled to a new trial on account of certain prejudicial errors which he

claims were committed during the trial of his case.

The indictment, omitting the caption and indorsements, is as follows:

"The grand jurors of the Territory of Oklahoma, inquiring in and for the body of Logan county, duly impaneled and sworn, upon their oaths do present: That on the 20th day of February, 1897, at the county of Logan, in said Territory, one James Asher, then and there being, in and upon one Belle Overstreet, a female under the age of fourteen years, of previous chaste and virtuous character, did make an assault, and with her, the said Belle Overstreet, he the said James Asher then and there did have sexual intercourse, she the said Belle Overstreet not being the wife of him, the said James Asher; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of Oklahoma.   J. C. Strang, County Attorney."

To this indictment the defendant demurred on the following grounds: "First, said indictment does not substantially conform to the requirements of the act entitled, 'Procedure Criminal'; second, that more than one offense is charged in said indictment; third, the facts stated in said indictment do not constitute a public offense; fourth, said indictment purports to be an indictment for rape, but the particulars and circumstances of the offense as set forth in the indictment are not sufficient to constitute the crime charged, viz. for rape."   The demurrer was overruled, to which ruling defendant excepted.   Other objections were made and motions filed which go to the sufficiency of the indictment, but they present no objections other than those raised in the demurrer, therefor we will consider the defendant's objections as raised by it.

Sections 5068 and 5069 of the 1893 Statutes of Okla-

homa, (Procedure Criminal,) provides: Section 5068. "The indictment must contain: First, the title of the action, specifying the name of the court to which the indictment is presented, and the name of the parties. Second: A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Section 5069. "The indictment must be direct and certain as it regards: First, the particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

The statute under which defendant was indicted is article 2 of "Crimes and Punishments" of the 1895 Session Laws of Oklahoma, and is in the following language:

"SECTION 1. Rape in an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: First, where the female is under the age of sixteen years, of previous chaste and virtuous character  *  *

"SEC. 2. Rape committed upon a female under the age of fourteen years  *  *  is rape in the first degree."

Counsel for defendant, in their argument, waive all objections raised by the demurrer, except that the indictment does not charge the defendant with having feloniously assaulted and ravished Belle Overstreet. It is contended that the indictment must allege intent, or that the crime was done feloniously. The statute defines rape. It provides that the indictment must contain a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. Would a person of common understanding know what is intended by reading this indictment? If he would, then the indictment, in that particular, meets

the requirements of our law.   We think it would be very hard to find a person in this Territory, who has reached the age of accountability, whose understanding is so uncommonly deficient as not to know what is intended by the language used in the indictment in this case. The common law forms of indictment are not required under our practice.

Our legislature never intended that indictments should be constructed out of words and phrases highly technical in their meaning, but, on the contrary, have said that the charging part of an indictment shall be in ordinary and concise language, so as to enable a person of common understanding to know what is intended.   The statute regarding rape, above quoted, does not say one word about intent.   It simply says that the doing of certain acts under certain conditions shall constitute rape.   It does not provide that one who "knowingly" or "intentionally" has sexual intercourse with a female under 16 years of age shall be guilty of rape, but makes the act of sexual intercourse with a female under 16 years of age, without regard to intent, rape.   If it where necessary to charge intent, it would also be necessary to prove it. This might, in many cases, be very hard to do.   If intent is a necessary element to constitute the crime, then the Territory would have had to prove beyond a reasonable doubt that the 'defendant knew that the girl he assaulted was under 14 years of age.   Our legislature intended to relieve the Territory from this difficult task, and by so doing it gave us a wise and just law.

The question of intent was discussed by Chief Justice Dale in the case of *Garver v. Territory*, 5 Okl. 342, 49 Pac. 470.   This was a case where the defendant was charged with carelessly permitting persons to escape from the

Oklahoma county jail. The section of the statute under which he was indicted is as follows:

"Every sheriff, coroner, clerk of a court, constable or other ministerial officer, and every deputy and subordinate of any ministerial officer who either, First: willfully or carelessly allows any person lawfully held by him in custody to escape or go at large except as may be permitted by law, * * is guilty of a felony." (Okl. St. 1890, Sec. 2020.)

The chief justice, in that case, speaking for the court, said: "As we construe the law, it is unnecessary to allege an intent where the statute does not make the intent a necessary ingredient of the offense, and this view of the law appears to be well supported by the adjudicated cases."

In the case of *State v. Newton*, 44 Iowa, 45, the defendant was tried for an assault upon a child under 10 years of age, and in the opinion of the appellate court the following language is used: "It is insisted that the instructions were erroneous, in that they failed to direct the jury that the defendant could not be convicted unless it was proved he knew the child was under the age of 10 years. The crime does not depend upon the knowledge of the defendant of the fact that the child was under ten years of age, but upon the fact itself."

In *Harding v. People* (Colo. Sup.) 15 Pac. 727: "Nor was it necessary to allege any criminal intent. The rule is that, if the statute creating the offense is silent concerning the intent, there need be no intent alleged."

Every man is presumed to know that it is a crime to have sexual intercourse with a female under 14 years of age, and he is legally bound to refrain from such acts. If, however, he takes his chances without any knowledge of the girl's age, he cannot complain of the punishment

provided therefor, just because he did not intend to have sexual intercourse with a girl who was under the age of consent. When a crime has been actually accomplished, intent is presumed from the acts. Other authorities could be cited, but, inasmuch as our own court has settled this question, it is unnecessary; and, without passing upon the necessary allegations in indictments for other offenses, we hold that in an indictment for rape, where the act has been accomplished, it is not necessary to allege that the accused did, feloniously or with felonious intent, commit the crime.

The defendant alleges that the court erred in admitting incompetent, irrelevant, and immaterial testimony, over the objection of defendant, during the progress of the trial, and excepted to by defendant, which alleged error consists of the following question and answer:

"Question. Where you in jail in Burlington, Kansas? Answer (by defendant) I have been in jail in Burlington, Kansas."

Other questions were asked the defendant, relative to his said imprisonment, while on the witness stand, by the county attorney, but the court sustained the objections of defendant's counsel, and for that reason they were not answered. In our judgment, the question asked and answered was highly proper. The defendant had taken the witness stand as a witness in his own behalf, and, having done so, the county attorney had a right to ask him any question pertaining to the matter at issue, or that would go to his credibility as a witness. It has always been held permissible, on cross-examination, to show how much of a witness' time he has spent in jail or in the penitentiary. This is done for the purpose of showing the character of the man, as to whether or not

he is a man who is worthy of belief.  Under the laws of the Territory of Oklahoma, a defendant cannot be compelled to testify against himself when on trial charged with crime; but if, in his judgment, he deems it best to take the witness stand, and testify in his own behalf, by so doing he voluntarily subjects himself to the same cross-examination that would be proper for any other witness.  In fact, in many instances questions can be asked a defendant, on cross-examination, while testifying in his own behalf, that could not be asked any other witness.

In Clark, Cr. Proc., on page 550, appears the following language:  "When a witness is cross-examined, he may, in addition to the questions hereinbefore referred to, be asked any questions which tend (1) to test his accuracy, veracity, or credibility; or (2) to shake his credit by injuring his character.  Witnesses have been compelled to answer such questions, though the matter suggested was irrelevant to the matter in issue, and though the answer was disgraceful to the witness, as where he was asked as to the commission of a crime, or as to immoral conduct; but it is submitted that the court has the right to exercise a discretion in such cases, and to refuse to compel such questions to be answered when the truth of the matter suggested would not, in the opinion of the court, affect the credibility of the witness as to the matter to which he is required to testify."

It is also contended by counsel for defendant that the court erred in overruling his second motion for a new trial, the basis of which was newly-discovered evidence. On this motion a hearing was had before the trial court, during which several affidavits were introduced in evidence, and the testimony of a number of witnesses taken.

It appears that some time after the original trial Belle Overstreet executed an affidavit, in which she states that all her testimony given at the trial was false, and that her father compelled her to testify that the defendant had had sexual intercourse with her, and threatened to kill her if she did not testify as he directed. This affidavit was introduced in evidence on the hearing on the motion for a new trial. The county attorney then called Belle Overstreet as a witness, and interrogated her as to the truthfulness of the testimony she had given on the trial, and also asked her how she came to execute the affidavit offered in evidence by defendant. In response to these questions she stated that she was induced by certain neighbors (naming them) to make this affidavit; that they told her that, if she did not deny the truthfulness of her testimony given upon the trial of the defendant, they would send her and her father to the penitentiary; that they told her that defendant was out of his mind, and that if she would go to Guthrie, and make an affidavit, and retract what she had stated in her evidence on the trial, defendant would marry her; and made many other statements, relative to her testimony, and urged her to execute the affidavit, which she did. In her affidavit she says that at the time she executed the same she was more than 16 years of age. On the hearing on the motion she testified that she was not yet 14 years of age, and that her former testimony was true. The judge who tried the case heard the evidence on the motion for a new trial; he saw all the parties; he saw their demeanor upon the witness stand while testifying. It was an issue of fact that was tried on a hearing of the motion for a new trial. The trial court was better able to judge as to the credibility of the witnesses

than is the appellate court, and it evidently thought that the witness Belle Overstreet was induced by means of threats of injury to herself and father to execute the affidavit, which it doubtless found to be false. The showing was not such as would warrant the trial court in setting aside the judgment and sentence. We therefore hold that the motions for a new trial were properly overruled.

The only other complaint is that the sentence imposed is too oppressive; that it is too severe; and in presenting this feature to the court counsel indulged in the following language: "The imposing of a sentence for fifteen years, under the circumstances of this case, was not the exercise of a sound discretion, but rather the cruel and arbitrary exercise of power. The girl and the members of her family are not refined or sensitive characters. No one's feelings have been outraged; no one has suffered." This language is the first intimation we have ever had that laws were enacted for the protection of the refined and sensitive, and not for those in the more humble walks of life. This language is the first statement we have ever seen indicating that our law-makers did not intend to protect the virtue and innocence of the daughters of the uneducated the same as they protect the daughters of the country's elite. No one has been outraged! No one has suffered! Is it possible that a child of less than 14 years of age can be ravished, and no one's feelings outraged, and without any one suffering? The law was not passed for the protection of any particular person or class of persons. It was passed to protect virtue, to protect society; and he who steals the virtue of the most illiterate and uncouth girl is, in law, guilty of as heinous a crime as he who destroys a child accustomed to the

highest culture and refinement. The punishment meted out to the defendant is severe. His crime was great. He took that which he can never return. He practically destroyed a life. When he assaulted this little girl, and gratified his lustful passion, he, by such wicked act, out-raged virtue, from the effects of which society will ever suffer. He should pay the penalty. There are, doubtless, cases where persons are charged with the crime of rape in which clemency should be shown, but not where the crime is committed on one under the age of consent. In such a case there can be no mitigating circumstances. We find no error in the record, and for the reasons stated the judgment of the lower court is hereby affirmed.

All of the Justices concurring.