(No. 27520.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLARENCE HALKENS, Plaintiff in Error.

*Opinion filed March 21, 1944.*

JAMES M. BURKE, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel;) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

The defendant, Clarence Halkens, was indicted in the criminal court of Cook county for the crime of armed robbery. The indictment consisted of three counts which are similar except that in the second count there was an addi-

tional charge that defendant had previously been convicted of the crime of robbery with a gun. Upon a trial before a jury, the defendant was found guilty and, after motions for a new trial and in arrest of judgment were overruled, he was sentenced to the penitentiary for the term of his natural life. To reverse such judgment of conviction he sues out this writ of error.

A stipulation shows that the defendant was previously, in 1922, indicted, tried before a jury, found guilty of robbery while armed and sentenced to the Illinois State Penitentiary at Joliet.

The record discloses the following main facts: Stanley Burek was the secretary-treasurer of the Security Benevolent Association, a corporation, and it was his duty once each month to collect dues from each member and deposit them in the bank. On April 2, 1940, he went to 1062 N. Ashland avenue to attend a meeting of the Pulaski Council. The meeting was held in a hall about five feet below the street, and the hall was about 30 feet by 40 feet in size. He got there about 5:00 P. M. and had three assistant collectors and a police officer with him. About 7:30 or 7:45 he started to leave the hall for the bank with the officer, and just as they arrived a few feet from the stairway that goes to the door, he saw four men walking down the steps, each one with a gun in his hand, and they were told to "lay down." He testified that four men were there and that one man stood over him and another with a zipper bag went to the collectors and took all the money. He stated there were about 50 to 65 people in the hall at the time of the robbery. Eugene Offerman, the officer attending Burek, stated that when the men entered one had a machine gun and told them it was a stickup and kept him covered and forced him back to the rear of the hall; that he, Offerman, had a gun in a holster on his right side and that the gun was taken from him by the defendant, Clarence Halkens. He said the other three men also had

guns and identified the man taking the money from the cashiers as one Hall. He further testified that the man with the machine gun was Richard Smith and the other man was Fred Gurney. He stated that subsequently he examined some photographs at the detective bureau and identified those of Clarence Halkens, Richard Smith and Montgomery Hall. Later on he testified that he was at the detective bureau and identified Clarence Halkens, the defendant, Richard Smith and Montgomery Hall at a showup on a platform; that Burek, Mrs. Burek and John Blazek were also present, but were unable to identify any of the robbers. On the trial Fred Gurney testified for the State and stated that he participated in the robbery; that he had served time in the Minnesota State Penitentiary at Stillwater, and that he was in the company of Dick Smith, Montgomery Hall and Clarence Halkens when the robbery was committed. Rudolph J. Friedl testified that he was a police officer and that on July 29, 1940, he and some other officers arrested Clarence Halkens, Arthur McWayne, Richard Smith, Montgomery Hall and Morris Factor. At that time he searched Halkens and took from him the keys to Halkens's car. Halkens told him where the car was parked, and under the front seat he found a brown portfolio with three revolvers in it, all of which were loaded when he found them. These revolvers, over objection, were admitted in evidence. John J. Hanrahan testified that he was a sergeant of police and that he had occasion to talk to Clarence Halkens on the night of July 30, 1940; that Halkens on that occasion denied any participation in the Security Benevolent Association robbery, and on the next day he admitted to Hanrahan that he was in the robbery but that he could not put anything down in writing.

On behalf of the defendant his counsel moved the court to call Montgomery Hall and Morris Factor as court's witnesses, which motion was denied. The defend-

ant then called Montgomery Hall to the stand, but he refused to answer any questions as to material matters concerning the robbery. Morris Factor testified that he knew Clarence Halkens and that on July 29 he had borrowed Halkens's car; that Halkens had given him the keys to go and get it; and that he was the one who had put the brief case in the car; that it was the first time that this brief case had been in the car; and that as far as he knew the defendant knew nothing about it; that the three revolvers belonged to the witness. On cross-examination by the State's Attorney he testified that he knew Halkens about six months and Smith about eight years; that they did time together in San Quentin, California, for robbery. The assistant State's Attorney at that time asked Factor several questions about former convictions, to which objections were made by counsel for defendant and motions were made to withdraw a juror on the basis that prejudicial evidence had been presented, all of which motions were denied.

Clarence Halkens, the defendant, testified in his own behalf and denied any connection with the crime charged in the indictment whatever. He denied any knowledge of the portfolio or guns. He also denied making the statements by way of confession attributed to him by sergeant Hanrahan. The defendant Clarence Halkens was indicted together with Montgomery Hall and Richard Smith, but the case against both Hall and Smith was *nolle prossed*. The defendant claims a number of alleged errors, the most serious in our judgment being that the court admitted, over objection of the defendant, incompetent, immaterial and prejudicial evidence.

The witness Moe Factor was brought to the trial as a witness on behalf of the defendant by a writ of *habeas corpus ad testificandum* and testified that he was at that time an inmate of the Illinois State Penitentiary; that he had known Halkens about six months and Smith about eight years. He then described how he had borrowed the

keys to Halkens's car and placed therein the brief case containing the three revolvers. On cross-examination by the assistant State's Attorney, Factor was examined as follows:

"Q. And how long have you known Smith?

A. I have known Smith about eight years.

Q. And as a matter of fact, you and Smith did time together out in San Quentin, California?

A. That is correct.

Q. And you did time at San Quentin for robbery, is that correct?

A. That is right."

Here counsel for defendant objected and moved to withdraw a juror and continue the case. The objection was overruled. Outside of the presence of the jury he was permitted to state more fully the ground for his objection, which was that the only proper way to prove the record of a prior conviction was by the record itself or by a certified copy thereof. The hearing was then resumed before the jury, and later in the cross-examination by the State, the following occurred:

"Q. You have pleaded guilty here in the court, did you not?

A. Yes sir.

Q. To a robbery committed at the Good Humor Ice Cream Company?

Mr. Burke: Same objection, if the court please.

The Court: Objection overruled.

Q. And were you on any other hold-ups?"

To which question objection was sustained.

It is contended that the cross-examination of the witness Factor, disclosing a previous conviction and sentence to the penitentiary, constituted reversible error, because such fact could be proved only by the introduction of the record or an authenticated copy thereof. Apparently the object of the questions on cross-examination was not only to affect the credibility of the witness, but also to show

the character of Smith, whom defendant admitted he had known for twenty-five years, as being that of a convict. Defendant was also asked, under cross-examination, about various names he had gone under in the past, and by what name he was known in the Menard penitentiary.

Without considering at this time the fact that Factor had been brought from the penitentiary to testify, and defendant having testified on direct examination to having been previously convicted and served a term in the penitentiary, it may be well to re-examine the question of the necessity for proving the conviction of a *defendant,* or a witness in a criminal case, of an infamous crime, for the purpose of affecting his credibility, other than by a record of his conviction or by an authenticated copy thereof.

At common law, and prior to the adoption of the Criminal Code of 1874, neither party to a civil suit, nor a defendant in a criminal prosecution, was permitted to testify. They were not competent witnesses, and did not become so in civil cases until the adoption of the Evidence Act, (Ill. Rev. Stat. 1943, chap. 51, par. 1;) nor in criminal cases until the adoption of section 6 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1943, chap. 38, par. 734.) However, at common law in either civil cases or criminal prosecutions any person not a party was disqualified from testifying if he had been convicted of an infamous crime, and proof of such conviction was not offered to affect his credibility, but to destroy his competency as a witness. (Greenleaf on Evidence, vol. 1, sec, 347, 16th ed.; Jones on Evidence, sec. 716; Blackstone, vol. 3, page 370.) The conviction of an infamous crime at common law was followed by certain other consequences. One so convicted could not vote, become an executor or guardian, act as a trustee of a private trust, nor hold an office of profit or honor. (Bouvier.) By reason of these severe results it was not permitted at common law to establish infamy, as

a condition resulting from conviction of an infamous crime, in any other way except by the record of conviction.

Upon the adoption of the Criminal Code, a specification of what constituted infamous crimes was enacted into the statute. (Ill. Rev. Stat. 1943, chap. 38, par. 587.) The same statute provided that no person should be disqualified as a witness in a criminal case as a party or otherwise, or by reason of having been convicted of any crime, but such conviction could be shown for the purpose of affecting his credibility. Thus it appears that the relevancy of proving the conviction of an infamous crime under former laws was for the purpose of destroying the competency of a witness, but since the change in the statute it has been only for the purpose of affecting the credibility of the witness.

The statute involving evidence in civil cases, which provided, in effect, that the witness could be required to testify to his former conviction, has been held not to apply to criminal cases. (*Bailey* v. *Beall,* 251 Ill. 577.) So far as criminal proceedings are concerned there is nothing in the statute that provides how the conviction of a crime, to affect the credibility, is to be proved or established, and, since at common law the conviction of an infamous crime to establish infamy could only be done by a record, this rule was adopted in establishing the conviction of a crime for the purpose of affecting credibility, (*Bartholomew* v. *People,* 104 Ill. 601,) which rule has been consistently followed by this court since it was adopted.

There is a diversity of opinion as to the soundness of the rule laid down in this State, especially with respect to witnesses other than the defendant himself. A great majority of the States have established the rule that if a defendant in a criminal case takes the witness stand he becomes the same as any other witness, and proof of a conviction of a crime may be shown on cross-examination

as affecting his credibility. This rule in other States is established, in some of them by the decisions of the highest court, in others by the enactment of a statute authorizing it. In the United States courts the rule formerly was the same as in Illinois, but in later years the general practice of other States has been followed.

Among the courts which have permitted the cross-examination of a defendant to show the conviction of a crime are the following: *State* v. *Palko*, 186 Atl. 657, 121 Conn. 669; *State* v. *Grant*, 133 Atl. 790, 3 W. W. Harr. 195; *Squires* v. *State*, 27 So. 864, 42 Fla. 251; *Dotterer* v. *State*, 88 N. E. 689, 172 Ind. 375; *State* v. *Pfefferle*, 12 Pac. 406, 36 Kan. 90; *State v. Knowles*, 57 Atl. 588, 98 Me. 429; *McLaughlin* v. *Mencke*, 30 Atl. 603, 80 Md. 83; *Commonwealth* v. *Fortier*, 155 N. E. 8, 258 Mass. 98; *Driscoll* v. *People*, 11 N. W. 221, 47 Mich. 413; *Asher* v. *Territory*, 54 Pac. 445, 7 Okla. 188; *Commonwealth* v. *Racco*, 73 Atl. 1067, 225 Pa. 113; *State* v. *Ellwood*, 24 Atl. 782, 17 R. I. 763; *State* v. *Williamson*, 43 S. E. 671, 65 S. C. 242; *Sipanek* v. *State*, 272 S. W. 141, 100 Tex. 489; *State* v. *Slack*, 38 Atl. 311, 69 Vt. 486; *State* v. *Hill*, 43 S. E. 160, 52 W. Va. 296; *Shafer* v. *Eau Claire*, 81 N. W. 409, 105 Wis. 239; *McIntosh* v. *United States*, 1 Fed. 2d 427; *Williams* v. *United States*, 3 Fed. 2d 129. The last-mentioned case contains an exhaustive discussion of the cases cited from more than twenty States to support it.

The States which have authorized such practice by statute are Arkansas, California, Colorado, Iowa, Idaho, Kentucky, Mississippi, Montana, Nebraska, New Jersey, New Mexico, New York, Utah and Wyoming. The States which follow the Illinois rule are Georgia, Missouri, and Washington. New York, Arkansas, California, and perhaps others, formerly held to the record rule but have since changed it by statute.

The number of cases cited as supporting the cross-examination rule is somewhat confusing, as in many States it is proper to show conviction of a misdemeanor, or having been arrested or indicted, or acts reflecting upon the character of a witness as affecting credibility. Proof of such character is not admitted in this State for the purpose of impeachment. (*People* v. *Halpin,* 276 Ill. 363; *People* v. *Lehner,* 326 Ill. 216; *Hayward* v. *People,* 96 Ill. 492; *Gifford* v. *People,* 87 Ill. 210.) The rule as to *what* may be shown to affect credibility of a witness is quite as much at variance as *how* it may be proved. Note to *Lodge* v. *State,* 82 A. S. R. 23.

Section 6 of division XIII of the Criminal Code, removing the restriction of interest or infamy as to the competency of witnesses in criminal cases, was first construed in *Bartholomew* v. *People,* 104 Ill. 601, where we applied the common-law rule required in proof of infamy to the case of proving the conviction of the defendant of an infamous crime for the purpose of affecting his credibility. This case established three propositions of law: (1) the previous conviction must be of an infamous crime of the character designated in the statute; (2) it must be proved by a record or an authenticated copy thereof; and (3) the things that must be contained in the record are designated. This case has been cited many times, and so far as applied to the defendant in a criminal case has never been deviated from, and was followed in *Kirby* v. *People,* 123 Ill. 436; *Simons* v. *People,* 150 Ill. 66; *People* v. *Blevins,* 251 Ill. 381; *People* v. *Schallman,* 273 Ill. 564; *People* v. *Reed,* 287 Ill. 606; *People* v. *Green,* 292 Ill. 351; *People* v. *Brocamp,* 307 Ill. 448, and *People* v. *Decker,* 310 Ill. 234. All of these cases hold it is improper to cross-examine the defendant as to his conviction of a crime.

It has been applied in cases where the State failed to establish the previous conviction by a record showing essen-

tial proceedings. (*People* v. *Andrae,* 295 Ill. 445; *People* v. *Novak,* 343 Ill. 355; *People* v. *Hunt,* 357 Ill. 39.) It has been cited in civil cases. (*Matzenbaugh* v. *People ex rel. Galloway,* 194 Ill. 108; *Clifford* v. *Pioneer Fire-Proofing Co.* 232 Ill. 150.) But in such instances it was inapplicable, as a statutory authority existed in the Evidence Act (Ill. Rev. Stat. 1943, chap. 51, par. 1,) for the practice in civil cases.

It has also been followed where the defendant attempted to show the conviction of a crime on the part of a witness for the People. (*People* v. *Goodman,* 283 Ill. 414; *People* v. *Boneau,* 327 Ill. 194.) In *People* v. *Parks,* 321 Ill. 143, and *People* v. *Lehner,* 326 Ill. 216, it is applied because the crimes proved did not constitute infamous crimes. So far as we are able to ascertain, the rule has been applied to a witnesses, other than the defendant, in only the following cases: *McKevitt* v. *People,* 208 Ill. 460; *People* v. *Parks,* 321 Ill. 143; *People* v. *Garippo,* 321 Ill. 157; *People* v. *Lehner,* 326 Ill. 216; *People* v. *Lind,* 370 Ill. 131. Two of these cases, *People* v. *Parks,* 321 Ill. 143, and *People* v. *Lehner,* 326 Ill. 216, may be excluded upon the question of the relevancy because the offenses sought to be proved were not infamous, and therefore followed the *Bartholomew case* in not being competent for any purpose. The reference in *People* v. *Lind,* 370 Ill. 131, was inapplicable, as the case was decided upon the question of the legality of the search of defendant's premises. Thus we find that it is first in *McKevitt* v. *People,* 208 Ill. 460, that the rule was applied to a witness other than the defendant himself, which case cites the *Bartholomew case* and *Simons* v. *People,* 150 Ill. 66, in support of it. A statement to the effect that it applies to witnesses as well as defendant appears in *People* v. *Decker,* 310 Ill. 234, although unnecessary to the opinion, as the examination complained of was only of the defendant and not of a witness. In the case of *People* v. *Garippo,* 321 Ill. 157,

the *Bartholomew case* is cited as supporting the rule that a witness not a defendant may not be cross-examined as to other crimes, but in that case it appeared that he was only asked as to whether he had been arrested, and what he was arrested for, which has long been improper on cross-examination. *People* v. *Halpin,* 276 Ill. 363; *People* v. *Lehner,* 326 Ill. 216.

We are calling attention to the numerous citations of *Bartholomew* v. *People,* 104 Ill. 601, because it appears to us the same reasons do not exist for applying the rule to a witness in a criminal case that would be proper to apply to the defendant himself. The reason given by the earlier authorities for the requirement of a record is that there must be a certainty, and that a witness may be mistaken when he said he was convicted of a felony, when in fact it might be for only a misdemeanor. (*Rex* v. *Careinion,* 8 East. 77.) At an early date, however, the courts commenced to be of the view that there could be practically as much certainty of knowledge of conviction on the part of the witness, without fear of mistake, as there could be from the record itself. *Clement* v. *Conrad,* 19 Mich. 175; *State* v. *Knowles,* 98 Mich. 429, 57 Atl. 588; *Commonwealth* v. *Racco,* 73 Atl. (Pa.) 1067.

There are several reasons why the majority rule cannot apply to its full extent in Illinois. We think there is a considerable difference in the effect upon a defendant in a criminal case in cross-examining him to establish conviction of an infamous crime from that in cross-examining a witness either for the State or for the defendant. In the case of the defendant himself it will inevitably affect his defense to show he had been previously convicted of a crime, and especially to compel him to so testify himself; while on the other hand, if merely the record of conviction is offered in evidence, not only is there no humiliation of the witness, but the one fact of conviction and its purpose can be controlled by instructions. In addition

there are certain crimes in which the jury fixes the punishment, and there is a possibility that compelling the defendant to testify generally on cross-examination will have some effect upon the penalty fixed by the jury. The State is not liable to be surprised, because it knows as soon as the defendant does whether his credibility be in question in apt time to procure such a record. And in addition to all of these facts it would be difficult for the defendant to answer accurately whether he had been convicted of an infamous crime, because he may have committed a crime which is not infamous, proof of which is not admissible in any case.

A witness, not a defendant, however, is in a different position. In the first place it cannot affect anything except his credibility, because, not being on trial, neither the jury nor the court can use it in administering punishment. Also, it will not subject him to the same hazards to which a defendant is subject in being before the court as a criminal. And finally, the State in many cases, being unaware of whom the defendant may call as witnesses, may be left at a disadvantage in being unable to ascertain whether the credibility of the witness is liable to be impeached by a previous conviction.

None of these matters were touched upon in the original *Bartholomew case,* and since the defendant in that case was the one who was cross-examined, and the offense sought to be proved was not infamous, it is doubtful if the court gave consideration to the effect of the statute upon witnesses not a defendant himself. We are inclined to the view that what we have previously said concerning proof of the former conviction of a defendant is undoubtedly sound, and should be followed and adhered to. On the other hand, although the *Bartholomew case* was cited as authority in the three cases, where the rule is applied to witnesses, it is done so only by way of declaration and without the citation of authority, and we believe was inadvertently said.

None of the effects of infamy at common law applies to a witness not a defendant, because the whole effect of the sentence in the prior conviction is fixed by the statute and may be removed by pardon. (Ill. Rev. Stat. 1943, chap. 38, par. 587.) It must, however, be remembered that, even though not a defendant, the witness can be made to testify only to former convictions involving infamous crimes, and cannot be interrogated on arrests or indictments, or upon convictions of crimes not infamous, as the credibility of a witness is not presumed to be affected by anything less than the conviction of an infamous crime.

It will be recalled that Factor appeared as a witness, brought on *habeas corpus* from the penitentiary, and his testimony of another conviction was merely cumulative. He did, however, testify to a fact that a third person, *viz.,* Smith, a friend and associate of the defendant, was in the penitentiary with him. It was improper to prove this third party was a convict, either in this manner or for the purpose of affecting the defendant. He was one of the parties charged with the robbery, although not tried at that time. The fact that he had known Smith for many years, coupled with the fact he was shown to have been a former convict, could not help but have an injurious effect upon the jury, especially in a case where the evidence is fairly close.

It is, of course, unnecessary to do more than state it would be highly improper to suggest, by way of questions on cross-examination, that a witness had been confined in the penitentiary, merely for the purpose of throwing suspicion upon his credibility. Such a practice has been held reversible error. And further, if such questions are asked, and such prior convictions denied by the witness, the only manner in which to establish the same is by a record of conviction of an infamous crime, and not by other witnesses.

We are of the opinion that this element brought prejudicial error into the case which will necessitate a reversal.

*Reversed and remanded.*